OPINION OF THE COURT
 

 Rosenblatt, J.
 

 In
 
 Matter of Levandusky v One Fifth Ave. Apt. Corp.
 
 (75 NY2d 530 [1990]) we held that the business judgment rule is the proper standard of judicial review when evaluating deci
 
 *150
 
 sions made by residential cooperative corporations. In the case before us, defendant is a shareholder-tenant in the plaintiff cooperative building. The relationship between defendant and the cooperative, including the conditions under which a shareholder’s tenancy may be terminated, is governed by the shareholder’s lease agreement. The cooperative terminated defendant’s tenancy in accordance with a provision in the lease that authorized it to do so based on a tenant’s “objectionable” conduct.
 

 Defendant has challenged the cooperative’s action and asserts, in essence, that his tenancy may not be terminated by the court based on a review of the facts under the standard articulated in
 
 Levandusky.
 
 He argues that termination may rest only upon a court’s independent evaluation of the reasonableness of the cooperative’s action. We disagree. In reviewing the cooperative’s actions, the business judgment standard governs a cooperative’s decision to terminate a tenancy in accordance with the terms of the parties’ agreement.
 

 I.
 

 Plaintiff cooperative owns the building located at 40 West 67th Street in Manhattan, which contains 38 apartments. In 1998, defendant bought into the cooperative and acquired 80 shares of stock appurtenant to his proprietary lease for apartment 7B.
 

 Soon after moving in, defendant engaged in a course of behavior that, in the view of the cooperative, began as demanding, grew increasingly disruptive and ultimately became intolerable. After several points of friction between defendant and the cooperative,
 
 [1]
 
 defendant started complaining about his elderly upstairs neighbors, a retired college professor and his wife who had occupied apartment 8B for over two decades. In a stream of vituperative letters to the cooperative — 16 letters in the month of October 1999 alone — he accused the couple of playing their television set and stereo at high volumes late into the night, and claimed they were running a loud and illegal bookbinding business in their apartment. Defendant further charged that the couple stored toxic chemicals in their apartment for use in their “dangerous and illegal” business. Upon investigation, the cooperative’s Board determined that the
 
 *151
 
 couple did not possess a television set or stereo and that there was no evidence of a bookbinding business or any other commercial enterprise in their apartment.
 

 Hostilities escalated, resulting in a physical altercation between defendant and the retired professor.
 
 [2]
 
 Following the altercation, defendant distributed flyers to the cooperative residents in which he referred to the professor, by name, as a potential “psychopath in our midst” and accused him of cutting defendant’s telephone lines. In another flyer, defendant described the professor’s wife and the wife of the Board president as having close “intimate personal relations.” Defendant also claimed that the previous occupants of his apartment revealed that the upstairs couple have “historically made excessive noise.” The former occupants, however, submitted an affidavit that denied making any complaints about noise from the upstairs apartment and proclaimed that defendant’s assertions to the contrary were “completely false.”
 

 Furthermore, defendant made alterations to his apartment without Board approval, had construction work performed on the weekend in violation of house rules, and would not respond to Board requests to correct these conditions or to allow a mutual inspection of his apartment and the upstairs apartment belonging to the elderly couple. Finally, defendant commenced four lawsuits against the upstairs couple, the president of the cooperative and the cooperative management, and tried to commence three more.
 

 In reaction to defendant’s behavior, the cooperative called a special meeting pursuant to article III (First) (f) of the lease agreement, which provides for termination of the tenancy if the cooperative by a two-thirds vote determines that “because of objectionable conduct on the part of the Lessee * * * the tenancy of the Lessee is undesirable.”
 
 [3]
 
 The cooperative informed the shareholders that the purpose of the meeting was to determine whether defendant “engaged in repeated actions
 
 *152
 
 inimical to cooperative living and objectionable to the Corporation and its stockholders that make his continued tenancy undesirable.”
 

 Timely notice of the meeting was sent to all shareholders in the cooperative, including defendant. At the ensuing meeting, held in June 2000, owners of more than 75% of the outstanding shares in the cooperative were present. Defendant chose not attend. By a vote of 2,048 shares to 0, the shareholders in attendance passed a resolution declaring defendant’s conduct “objectionable” and directing the Board to terminate his proprietary lease and cancel his shares. The resolution contained the findings upon which the shareholders concluded that defendant’s behavior was inimical to cooperative living. Pursuant to the resolution, the Board sent defendant a notice of termination requiring him to vacate his apartment by August 31, 2000. Ignoring the notice, defendant remained in the apartment, prompting the cooperative to bring this suit for possession and ejectment, a declaratory judgment cancelling defendant’s stock, and a money judgment for use and occupancy, along with attorneys’ fees and costs.
 

 Supreme Court denied the cooperative’s motion for summary judgment and dismissed its cause of action that premised ejectment solely on the shareholders’ vote and the notice of termination. The court declined to apply the business judgment rule to sustain the shareholders’ vote and the Board’s issuance of the notice of termination. Instead, the court invoked RPAPL 711 (1) and held that to terminate a tenancy, a cooperative must prove its claim of objectionable conduct by competent evidence to the satisfaction of the court.
 

 Disagreeing with Supreme Court, a divided Appellate Division granted the cooperative summary judgment on its causes of action for ejectment and the cancellation of defendant’s stock. It modified Supreme Court’s order accordingly and remanded the case for a hearing on use and occupancy, legal fees and costs. The majority held that
 
 Levandusky
 
 prohibited judicial scrutiny of actions of cooperative boards “taken in good faith and in the exercise of honest judgment in the lawful and legitimate furtherance of corporate purposes” (296 AD2d 120, 124 [2002] [quoting
 
 Auerbach v Bennett,
 
 47 NY2d 619, 629 (1979)]). The two dissenting Justices would have required the cooperative to prove defendant’s objectionable conduct to the satisfaction of the court. Defendant appealed to this Court as of right pursuant to CPLR 5601 (a). We agree with the Appellate Division majority that the business judgment rule applies and therefore affirm.
 

 
 *153
 
 II. The
 
 Levandusky
 
 Business Judgment Rule
 

 The heart of this dispute is the parties’ disagreement over the proper standard of review to be applied when a cooperative exercises its agreed-upon right to terminate a tenancy based on a shareholder-tenant’s objectionable conduct. In the agreement establishing the rights and duties of the parties, the cooperative reserved to itself the authority to determine whether a member’s conduct was objectionable and to terminate the tenancy on that basis. The cooperative argues that its decision to do so should be reviewed in accordance with
 
 Levandusky’s
 
 business judgment rule. Defendant contends that the business judgment rule has no application under these circumstances and that RPAPL 711 requires a court to make its own evaluation of the Board’s conduct based on a judicial standard of reasonableness.
 

 Levandusky
 
 established a standard of review analogous to the corporate business judgment rule for a shareholder-tenant challenge to a decision of a residential cooperative corporation. The business judgment rule is a common-law doctrine by which courts exercise restraint and defer to good faith decisions made by boards of directors in business settings
 
 (see generally
 
 Davis,
 
 Once More, The Business Judgment Rule,
 
 2000 Wis L Rev 573 [2000]). The rule has been long recognized in New York
 
 (see e.g. Flynn v Brooklyn City R.R. Co.,
 
 158 NY 493, 507 [1899];
 
 Pollitz v Wabash R.R. Co.,
 
 207 NY 113, 124 [1912]). In
 
 Levandusky,
 
 the cooperative board issued a stop work order for a shareholder-tenant’s renovations that violated the proprietary lease. The shareholder-tenant brought a CPLR article 78 proceeding to set aside the stop work order. The Court upheld the Board’s action, and concluded that the business judgment rule “best balances the individual and collective interests at stake” in the residential cooperative setting
 
 (Levandusky,
 
 75 NY2d at 537).
 

 In the context of cooperative dwellings, the business judgment rule provides that a court should defer to a cooperative board’s determination “[s]o long as the board acts for the purposes of the cooperative, within the scope of its authority and in good faith”
 
 (id.
 
 at 538).
 
 [4]
 
 In adopting this rule, we recognized that a cooperative board’s broad powers could lead
 
 *154
 
 to abuse through arbitrary or malicious decisionmaking, unlawful discrimination or the like. However, we also aimed to avoid impairing “the purposes for which the residential community and its governing structure were formed: protection of the interest of the entire community of residents in an environment managed by the board for the common benefit”
 
 (id.
 
 at 537). The Court concluded that the business judgment rule best balances these competing interests and also noted that the limited judicial review afforded by the rule protects the cooperative’s decisions against “undue court involvement and judicial second-guessing”
 
 (id.
 
 at 540).
 

 Although we applied the business judgment rule in
 
 Levandusky,
 
 we did not attempt to fix its boundaries, recognizing that this corporate concept may not necessarily comport with every situation encountered by a cooperative and its shareholder-tenants. Defendant argues that when it comes to terminations, the business judgment rule conflicts with RPAPL 711 (1) and is therefore inoperative.* **
 
 [5]
 
 We see no such conflict. In the realm of cooperative governance and in the lease provision before us, the cooperative’s determination as to the tenant’s objectionable behavior stands as competent evidence necessary to sustain the cooperative’s determination. If that were not so, the contract provision for termination of the lease — to which defendant agreed — would be meaningless.
 

 We reject the cooperative’s argument that RPAPL 711 (1) is irrelevant to these proceedings, but conclude that the business judgment rule may be applied consistently with the statute. Procedurally, the business judgment standard will be applied across the cases, but the manner in which it presents itself varies with the form of the lawsuit.
 
 Levandusky,
 
 for example, was framed as a CPLR article 78 proceeding, but we applied the business judgment rule as a concurrent form of “rationality” and “reasonableness” to determine whether the decision was “arbitrary and capricious” pursuant to CPLR 7803 (3)
 
 (see id.
 
 at 541 n).
 

 
 *155
 
 Similarly, the procedural vehicle driving this case is RPAPL 711 (1), which requires “competent evidence” to show that a tenant is objectionable. Thus, in this context, the competent evidence that is the basis for the shareholder vote will be reviewed under the business judgment rule, which means courts will normally defer to that vote and the shareholders’ stated findings as competent evidence that the tenant is indeed objectionable under the statute. As we stated in
 
 Levandusky,
 
 a single standard of review for cooperatives is preferable, and “we see no purpose in allowing the form of the action to dictate the substance of the standard by which the legitimacy of corporate action is to be measured”
 
 (id.
 
 at 541).
 

 In addition, RPAPL 711 was derived from former Civil Practice Act § 1410 (6), which was enacted in 1920 (L 1920, ch 133, adding former Code Civ Pro § 2231 [6], recodified L 1921, ch 199, § 15). Before that, a landlord could evict a tenant based on the landlord’s sole and unfettered determination that the tenant was objectionable
 
 (see e.g. Manhattan Life Ins. Co. v Gosford,
 
 3 Misc 509 [1893];
 
 Waitt Constr. Co. v Loraine,
 
 109 Misc 527 [1919]). By enacting former Civil Practice Act § 1410 (6), the Legislature imposed on the landlord the burden of proving that the tenant was objectionable. While RPAPL 711 (1) applies to the termination before us, we are satisfied that the relationships among shareholders in cooperatives are sufficiently distinct from traditional landlord-tenant relationships that the statute’s “competent evidence” standard is satisfied by the application of the business judgment rule.
 

 Despite this deferential standard, there are instances when courts should undertake review of board decisions. To trigger further judicial scrutiny, an aggrieved shareholder-tenant must make a showing that the board acted (1) outside the scope of its authority, (2) in a way that did not legitimately further the corporate purpose or (3) in bad faith.
 

 III.
 

 A. The Cooperative’s Scope of Authority
 

 Pursuant to its bylaws, the cooperative was authorized (through its Board) to adopt a form of proprietary lease to be used for all shareholder-tenants. Based on this authorization, defendant and other members of the cooperative voluntarily entered into lease agreements containing the termination provision before us. The cooperative does not contend that it has the power to terminate the lease absent the termination
 
 *156
 
 provision. Indeed, it recognizes, correctly, that if there were no such provision, termination could proceed only pursuant to RPAPL 711 (1).
 

 The cooperative unfailingly followed the procedures contained in the lease when acting to terminate defendant’s tenancy. In accordance with the bylaws, the Board called a special meeting, and notified all shareholder-tenants of its time, place and purpose. Defendant thus had notice and the opportunity to be heard. In accordance with the agreement, the cooperative acted on a supermajority vote after properly fashioning the issue and the question to be addressed by resolution. The resolution specified the basis for the action, setting forth a list of specific findings as to defendant’s objectionable behavior. By not appearing or presenting evidence personally or by counsel, defendant failed to challenge the findings and has not otherwise satisfied us that the Board has in any way acted ultra vires. In all, defendant has failed to demonstrate that the cooperative acted outside the scope of its authority in terminating the tenancy.
 

 B. Furthering the Corporate Purpose
 

 Levandusky
 
 also recognizes that the business judgment rule prohibits judicial inquiry into Board actions that, presupposing good faith, are taken in legitimate furtherance of corporate purposes. Specifically, there must be a legitimate relationship between the Board’s action and the welfare of the cooperative. Here, by the unanimous vote of everyone present at the meeting, the cooperative resoundingly expressed its collective will, directing the Board to terminate defendant’s tenancy after finding that his behavior was more than its shareholders could bear. The Board was under a fiduciary duty to further the collective interests of the cooperative. By terminating the tenancy, the Board’s action thus bore an obvious and legitimate relation to the cooperative’s avowed ends.
 

 There is, however, an additional dimension to corporate purpose that
 
 Levandusky
 
 contemplates, notably, the legitimacy of purpose — a feature closely related to good faith. Put differently, all the shareholders of a cooperative may agree on an objective, and the Board may pursue that objective zealously, but that does not necessarily mean the objective is lawful or legitimate. Defendant, however, has not shown that the Board’s purpose was anything other than furthering the overall welfare
 
 *157
 
 of a cooperative that found it could no longer abide defendant’s behavior.
 
 [6]
 

 C. Good Faith, in the Exercise of Honest Judgment
 

 Finally, defendant has not shown the slightest indication of any bad faith, arbitrariness, favoritism, discrimination or malice on the cooperative’s part, and the record reveals none. Though defendant contends that he raised sufficient facts in this regard, we agree with the Appellate Division majority that defendant has provided no factual support for his conclusory assertions that he was evicted based upon illegal or impermissible considerations. Moreover, as the Appellate Division noted, the cooperative emphasized that upon the sale of the apartment it “will ‘turn over [to the defendant] all proceeds after deduction of unpaid use and occupancy, costs of sale and litigation expenses incurred in this dispute’ ” (296 AD2d at 127). Defendant does not contend otherwise.
 

 Levandusky
 
 cautions that the broad powers of cooperative governance carry the potential for abuse when a board singles out a person for harmful treatment or engages in unlawful discrimination, vendetta, arbitrary decisionmaking or favoritism. We reaffirm that admonition and stress that those types of abuses are incompatible with good faith and the exercise of honest judgment. While deferential, the
 
 Levandusky
 
 standard should not serve as a rubber stamp for cooperative board actions, particularly those involving tenancy terminations. We note that since
 
 Levandusky
 
 was decided, the lower courts have in most instances deferred to the business judgment of cooperative boards
 
 [7]
 
 but in a number of cases have withheld deference in the face of evidence that the board acted illegitimately.
 
 [8]
 

 
 *158
 
 The very concept of cooperative living entails a voluntary, shared control over rules, maintenance and the composition of the community. Indeed, as we observed in
 
 Levandusky,
 
 a shareholder-tenant voluntarily agrees to submit to the authority of a cooperative board, and consequently the board “may significantly restrict the bundle of rights a property owner normally enjoys” (75 NY2d at 536). When dealing, however, with termination, courts must exercise a heightened vigilance in examining whether the board’s action meets the
 
 Levandusky
 
 test.
 

 We have considered defendant’s remaining contentions, and find them without merit. Accordingly, the order of the Appellate Division should be affirmed, with costs.
 

 Chief Judge Kaye and Judges Smith, Ciparick, Wesley, Graffeo and Read concur.
 

 Order affirmed, with costs.
 

 [1]
 

 . Initially, defendant sought changes in the building services, such as the installation of video surveillance, 24-hour door service and replacement of the lobby mailboxes. After investigation, the Board deemed these proposed changes inadvisable or infeasible.
 

 [2]
 

 . Defendant brought charges against the professor which resulted in the professor’s arrest. Eventually, the charges were adjourned in contemplation of dismissal.
 

 [3]
 

 . The full provision authorizes termination “if at any time the Lessor shall determine, upon the affirmative vote of the holders of record of at least two-thirds of that part of its capital stock which is then owned by Lessees under proprietary leases then in force, at a meeting of such stockholders duly called to take action on the subject, that because of objectionable conduct on the part of the Lessee, or of a person dwelling in or visiting the apartment, the tenancy of the Lessee is undesirable.”
 

 [4]
 

 .
 
 See generally
 
 Franzese,
 
 Common Interest Communities: Standards of Review and Review of Standards,
 
 3 Wash U J L & Poly 663, 667 (2000); Hyatt,
 
 Common Interest Communities: Evolution and Reinvention,
 
 31 J Marshall L Rev 303, 343 (1998); Kim,
 
 Involuntary Sale: Banishing an Owner
 
 
 *154
 

 From, the Condominium Community,
 
 31 J Marshall L Rev 429, 438 (1998); Kress,
 
 Beyond Nahrstedt: Reviewing Restrictions Governing Life in a Property Owner Association,
 
 42 UCLA L Rev 837, 863 (1995).
 

 [5]
 

 . RPAPL 711 (1), in pertinent part, states:
 
 “A
 
 proceeding seeking to recover possession of real property by reason of the termination of the term fixed in the lease pursuant to a provision contained therein giving the landlord the right to terminate the time fixed for occupancy under such agreement if he deem the tenant objectionable, shall not be maintainable unless the landlord shall by competent evidence establish to the satisfaction of the court that the tenant is objectionable.”
 

 [6]
 

 . Indeed, the Appellate Division majority stated that in its own evaluation of defendant’s conduct, the record amply supported the Board’s determination, where defendant’s actions had a negative effect on all of the other 37 leaseholders including making them responsible for the payment of thousands of dollars in unnecessary legal fees.
 

 [7]
 

 .
 
 See e.g. Hochman v 35 Park
 
 W.
 
 Corp.
 
 (293 AD2d 650 [2d Dept 2002]);
 
 Sirianni v Rafaloff
 
 (284 AD2d 447 [2d Dept 2001]);
 
 Cooper v 6 W. 20th St. Tenants Corp.
 
 (258 AD2d 362 [1st Dept 1999]).
 

 [8]
 

 .
 
 See e.g. Abrons Found, v 29 E. 64th St. Corp.
 
 (297 AD2d 258 [1st Dept 2002] [tenant raised genuine issues of material fact as to whether board acted in bad faith in imposing sublet fee meant solely to impact one tenant]);
 
 Greenberg v Board of Mgrs. of Parkridge Condominiums
 
 (294 AD2d 467 [2d Dept 2002] [affirming injunction against board because it acted outside scope
 
 *158
 
 of authority in prohibiting tenant from erecting a succah on balcony]);
 
 Dinicu v Groff Studios Corp.
 
 (257 AD2d 218 [1st Dept 1999] [business judgment rule does not protect cooperative board from its own breach of contract]);
 
 Matter of Vacca v Board of Mgrs. of Primrose Lane Condominium
 
 (251 AD2d 674 [2d Dept 1998] [board acted in bad faith in prohibiting tenant from displaying religious statue in yard]);
 
 Johar v 82-04 Lefferts Tenants Corp.
 
 (234 AD2d 516 [2d Dept 1996] [board vote amending bylaws to declare plaintiff tenant ineligible to sit on cooperative board not shielded by business judgment rule]). While we do not undertake to address the correctness of the rulings in all of these cases, we list them as illustrative.