■ Donna M. Romeo, Appellant, v Ryan Barrella et al., Respondents, et al., Defendant. [921 NYS2d 83]—

The appeal from the intermediate order must be dismissed because the right of direct appeal therefrom terminated with the entry of judgment in the action (see Matter of Aho, 39 NY2d 241, 248 [1976]). The issues raised on the appeal from the order are brought up for review and have been considered on the appeal from the judgment (see CPLR 5501 [a] [1]).

Pietsch Gardens is a 19.289 acre parcel of land located on the shore of Peach Lake in North Salem, New York. In the 1930s, Pietsch Gardens was developed by the Pietsch family as a summer resort community. The Pietsch family owned and maintained the land, and leased building sites to tenants who, in turn, erected cottages on those leased sites.

In the late 1970s, Pietsch Gardens was sold by the Pietsch family and converted into a land cooperative. Title was vested in the Pietsch Gardens Cooperative, Inc. (hereinafter the Cooperative), which is governed by the Pietsch Gardens Cooperative Board of Directors (hereinafter the board) (hereinafter together the Pietsch defendants).

At the time the Cooperative was formed, there were 98 cottages on the land. Pursuant to the founding documents, the individual cottage owners maintained title to the structures, while title to each lot remained with the Cooperative. The cottage owners were extended offers to buy stock in the corporation

which represented the number of shares allocated to the particular site on which their cottage sat. The number of shares apportioned to each site was fixed by the board based on factors such as economic value, terrain, and view. The cottage owners were issued proprietary leases which granted each owner the exclusive right to occupy and use that particular lot.

Although a survey of the perimeter of the entire parcel was performed when title was obtained, the Cooperative, at the time of formation, deemed a survey of the individual sites to be cost prohibitive. It is undisputed that the Cooperative never performed an official survey "as to the sites." Instead, at the time of formation, the "size and configuration" of each lot was "established by the homeowners staking the boundaries and property limits."

The lack of individual site surveys is reflected on the standard proprietary lease. Each proprietary lease describes the particular site, based on the street address and lot number, and provides measurements as to the width and depth of the site. However, the leases specify that "no accurate survey exists" and that the measurements described are "approximate."

On September 5, 2001, the plaintiff obtained title to the cottage identified as 38 Cottage Lane. At the same time, the plaintiff obtained 176 shares of stock in the Cooperative, and was granted a proprietary lease which described the leasehold as "Block No. 11781 Lot 2, 26.0 ft. width X 62.0 ft. depth (1612 sq. ft.)." As with all of the proprietary leases issued by the Cooperative, the plaintiff's lease specified that "no accurate survey exists" and that the measurements were "approximate."

Sandra and Ryan Barrella (hereinafter together the Barrellas) purchased 40 Cottage Lane on March 5, 2007. 40 Cottage Lane is adjacent to 38 Cottage Lane, which is directly to the east. The two cottages are located within a few feet of each other.

Prior to the Barrellas' purchase, the plaintiff had sole use and occupancy of the land between the cottages. The plaintiff added plants, trellises, and other items in this area, and was never advised that she was utilizing property that was not part of her leasehold. After purchasing 40 Cottage Lane, however, the Barrellas commenced certain construction projects and alterations and, in this regard, asked the board to locate the boundary line between the two leaseholds. The board, in response, placed a metal spike in the ground which identified the boundary line as aligning with the outside edge of the cement block chimney on 38 Cottage Lane. According to this identified line, the land separating the cottages was part of the Barrellas' leasehold.

The plaintiff then filed the instant complaint. In the first

cause of action, the plaintiff sought, pursuant to RPAPL article 15, a judgment declaring her the rightful lessee of the 26-foot-by-62-foot plot of land that surrounds 38 Cottage Lane. More particularly, citing various land markers, the plaintiff insisted that the boundaries of this lot included the land between 38 Cottage Lane and 40 Cottage Lane. She also sought a declaration compelling the Barrella defendants to discontinue any construction encroaching on her leasehold and compelling them to remove a portion of an enclosed room at the rear of their cottage. In a second cause of action, the plaintiff asserted that the Cooperative and the Board had made numerous attempts to intimidate and disenfranchise her, and sought damages therefor.

In October 2008, the Supreme Court issued a "final disclosure order," which, among other things, gave the plaintiff permission to have a surveyor inspect and measure the individual lots. Despite receiving permission in October 2008, the plaintiff did not enter into an agreement with a surveyor until April 2009. According to the surveyor, the work product was not to be an actual "survey," but instead a "location map" of Cottage Lane which attempted to "fit" the cottages "within the confines of the dimensions on each proprietary lease."

At a status/trial readiness conference held on April 8, 2009, the plaintiff informed the Supreme Court that the "survey" would be completed before the 26th of April. Counsel acknowledged that there would be no further adjournments "[u]nder any circumstances." At a conference on April 28, 2009, however, the plaintiff requested and received two additional weeks to produce the survey and the field data that the survey was based upon. The plaintiff was specifically told that she would be precluded from using the survey if this deadline was not met.

At a conference held on May 22, 2009, the plaintiff again informed the Supreme Court that the survey had not been completed. The plaintiff requested another week and, despite noting that the plaintiff had "missed every deadline" and threatening sanctions, the Supreme Court gave the plaintiff three additional weeks to produce the survey and the field notes. The plaintiff was again told that she would be precluded from using the survey if she failed to serve opposing counsel with the survey and field notes by the new deadline. The Supreme Court stated to the plaintiff "I have given you opportunities at every time and you have not complied with the time limits I've imposed. You have utterly failed to move this case along."

At a conference held on June 11, 2009, the plaintiff initially stated that the survey had been completed, but that the field notes were not available because the surveyor had refused to

release the documents. Later,· during that conference, counsel admitted that he possessed a hard copy of the field notes, but insisted that he did not have permission to turn the data over. Although the plaintiff sought additional time and insisted that she could produce all of the necessary documents, the Supreme Court determined that the survey would be precluded. A preclusion order was signed on July 1, 2009, and in an order dated August 13, 2009, the Supreme Court denied the plaintiff's motion to vacate the preclusion order.

Thereafter, the Supreme Court granted the separate motions of the Barrellas and the Pietsch defendants for summary judgment dismissing the complaint insofar as asserted against each of them. Judgment was entered in favor of those defendants on January 21, 2010. We affirm.

"Generally, the nature and degree of the penalty to be imposed pursuant to CPLR 3126 against a party who refuses to comply with court-ordered discovery is a matter within the discretion of the court. A determination to impose sanctions for conduct which frustrates the disclosure scheme of the CPLR should not be disturbed absent an improvident exercise of discretion" (*Savin v Brooklyn Mar. Park Dev. Corp.*, 61 AD3d 954, 954 [2009] [internal quotation marks omitted]; *see Kihl v Pfeffer*, 94 NY2d 118, 123 [1999]; *Duncan v Hebb*, 47 AD3d 871, 871 [2008]; *Green v Green*, 32 AD3d 898, 899 [2006]). Here, because of the plaintiff's pattern of continued defaults, and her failure to offer a reasonable excuse, the Supreme Court properly inferred that her conduct was willful and contumacious, and providently exercised its discretion in precluding the plaintiff from introducing evidence at trial concerning the land map prepared by her surveyor (*see Duncan v Hebb*, 47 AD3d at 871; *Green v Green,* 32 AD3d at 899; *Precise Ct. Reporting v Karten*, 6 AD3d 412, 414-415 [2004]; *cf. Matter of Blauman-Spindler v Blauman*, 68 AD3d 1105, 1107 [2009]).

Moreover, contrary to the plaintiff's contention, summary judgment was properly awarded to the moving defendants. By submitting affidavits from three individuals familiar with the history of the properties, the moving defendants established, prima facie, that the historic property line was indeed located at the outside edge of the cement block chimney on 38 Cottage Lane. All three affidavits confirmed that the two cottages were originally attached and that, at the time the Cooperative was formed, the owners cut the adjoining roof along what was understood and agreed to be the property line.

In opposition, the plaintiff failed to raise a triable issue of fact. The plaintiff had no historical knowledge as to the location

of the boundary as staked by the homeowners at the time the Cooperative was formed, and her argument premised upon the number of shares she owns is without merit because the allocation of shares corresponds to factors other than the size of the lot. Moreover, as the Supreme Court properly noted, the size of the plaintiff's lot has not been decreased, as the lot simply never included the land that the plaintiff mistakenly believed it did.

With regard to the cause of action based upon the alleged attempts to disenfranchise or intimidate the plaintiff, the moving defendants demonstrated that the contested actions that occurred were within the authority of the board, and taken in good faith and for the benefit of the Cooperative, and, thus, that such actions were protected from judicial review pursuant to the business judgment rule (*see 40 W. 67th St. v Pullman*, 100 NY2d 147, 153 [2003]; *Matter of Levandusky v One Fifth Ave. Apt. Corp.*, 75 NY2d 530, 540 [1990]). In opposition, the plaintiff failed to raise a triable issue of fact (*see Helmer v Comito*, 61 AD3d 635, 636 [2009]; *Acevedo v Town 'N Country Condominium, Section I, Bd. of Mgrs.*, 51 AD3d 603, 604 [2008]).

Accordingly, the Supreme Court properly granted the separate motions of the Barrellas and the Pietsch defendants for summary judgment dismissing the complaint insofar as asserted against each of them.

The plaintiff's remaining contentions are without merit. Dillon, J.P., Florio, Dickerson and Cohen, JJ., concur.

---

Motion by the respondents Pietsch Gardens Cooperative, Inc., and Pietsch Gardens Cooperative Board of Directors on appeals from an order of the Supreme Court, Westchester County, entered November 16, 2009, and a judgment of the same court entered January 21, 2010, to strike pages 1381 through 1388 of the record on appeal and references to those pages in the appellant's brief on the ground that they contain or refer to matter dehors the record, to enlarge the record to include a certain letter dated April 7, 2009, and to enlarge the respondents' time to serve and file their briefs. Cross motion by the appellant for the court to take judicial notice of the material on pages 1381 through 1388 of the record on appeal or to enlarge the record to include that material. By decision and order on motion of this Court dated August 12, 2010, that branch of the motion which is to strike pages 1381 through 1388 of the record on appeal and references to those pages in the appellant's brief on the ground that they contain or refer to matter dehors the record and the cross motion were held in abeyance and referred to the

panel of Justices hearing the appeal for determination upon the argument and submission thereof.

Upon the papers filed in support of the branch of the motion and the cross motion, the papers filed in opposition thereto, and upon the argument of the appeal, it is

Ordered that the branch of the motion which is to strike pages 1381 through 1388 of the record on appeal and references to those pages in the appellant's brief on the ground that they contain or refer to matter dehors the record is granted, and those pages of the record on appeal and any references thereto in the appellant's brief have not been considered in the determination of the appeals; and it is further,

Ordered that the cross motion is denied. Dillon, J.P., Florio, Dickerson and Cohen, JJ., concur.