■ JOHN WIRTH et al., Appellants-Respondents, v CHAMBERS-GREENWICH TENANTS CORP. et al., Respondents-Appellants. [928 NYS2d 288]—

This action stems from a protracted dispute between plaintiff cooperative shareholders and the board of directors of a five-story cooperative building located in lower Manhattan. In the late 1970s, the five-story building was converted from commercial to a residential cooperative. Plaintiffs, who are husband and wife, reside in unit 5, which has exclusive use of the roof—the root of the acrimonious relationship among the parties.

In early 2005, plaintiffs purchased shares for the unit from nonparty Paul Wallich, who had performed alterations to the

roof for personal use that the coop board deemed improper. As a result, in exchange for gaining the board's consent to Wallich's sale of his shares to plaintiffs, the seller agreed to place $20,000 in escrow to cover the cost of corrections of the improper alterations of the roof. At the same time, plaintiffs, as the buyers of the shares for unit 5, entered into an escrow agreement with the board with regard to the disbursement of the $20,000. Further, plaintiff agreed not to permit use of the roof until certain additional protective measures were undertaken on the roof to be preapproved by both the coop and the coop's engineer, at plaintiffs' expense.

The relationship between plaintiffs and the board had an unauspicious beginning when the former placed astroturf on the roof without seeking the latter's approval. They also placed furniture and entertained guests on the roof without installing carry treads or taking other protective measures. Their relationship became increasingly strained when the board allegedly refused to review plaintiffs' apartment alterations plan, and plaintiffs refused to grant their consent to the release of the $20,000.

Meanwhile, in March 2007 plaintiffs received an offer from nonparty Chris Hoffman to purchase their shares for $1,485,000. No contract was signed, and in May 2007 Hoffman withdrew the offer when his lawyer learned that there was a plethora of problems between plaintiffs and the board that might have caused an inordinate delay of the closing. The lawyer also learned that the building may be used only for joint living-work quarters for artists (JAR).

Later, in October 2007, plaintiffs entered into a contract to sell their shares to nonparty Timothy Merrell for $1,485,000. The contract was conditioned upon a resolution by plaintiffs, by a certain date, of their disputes with the board. In November 2007, the board informed counsel that it would not process any application for the sale of the shares of unit 5 until certain conditions were met, including the resolution of the roof dispute and getting assurance from plaintiffs that the prospective buyer had been informed of the JAR residency requirement. In July 2008, Merrell cancelled the contract.

Eventually, plaintiffs resorted to litigation of these disputes by commencing this action alleging 13 causes of action against the coop and/or board members. The claims relevant to this appeal are as follows: The first cause of action seeks to enjoin defendants from imposing certain conditions before processing any future purchase application for the sale of plaintiffs' coop shares, including the aforementioned JAR residence require-

ment. The second and third cause of actions similarly allege that defendants breached their fiduciary duty in that each of the defendants acted in bad faith with regard to plaintiffs' prospective purchasers (Merrell and Hoffman). The sixth and seventh causes of action similarly allege that defendant board members tortiously interfered with plaintiffs' prospective contracts with Hoffman and Merrell. The ninth cause of action seeks an injunction ordering defendants "to approve Plaintiffs' plans, as revised, for renovations to Unit 5." The tenth cause of action seeks, inter alia, to enjoin the use of unit 3 as a dance studio. The thirteenth cause of action seeks "the reasonable counsel fees and expenses which Plaintiffs have incurred in prosecuting this action and defending against the Co-op's counterclaims."

Defendants aver several counterclaims against plaintiffs. The counterclaims relevant to this appeal are as follows. The first counterclaim seeks to compel plaintiffs to release the escrow funds, a declaration that the coop is entitled to enter and examine the roof, and an injunction against plaintiffs from interfering with such access. The fifth counterclaim seeks attorneys' fees.

With regard to plaintiffs' first cause of action, plaintiffs submitted irrefutable proof that defendant coop board had no authority to require them to sell their unit as JARs. The business judgment doctrine does not apply when a coop board acts outside the scope of its authority (see 40 W. 67th St. v Pullman, 100 NY2d 147, 153-154 [2003]; Auerbach v Bennett, 47 NY2d 619, 631 [1979]). The proprietary lease states, "The Lessee (except the Lessee of the ground floor unit) shall not occupy or use the unit . . . for any purpose other than residential purposes" (Fe Bland v Two Trees Mgt. Co., 66 NY2d 556, 565 [1985] [The business judgment doctrine does not empower a coop board to make a decision that the proprietary lease does not authorize it to make]).

Defendants' reliance on article 7-B of the Multiple Dwelling Law and Saul v 476 Broadway Realty Corp. (290 AD2d 254 [2002]) is misplaced. That statute provides that a building that at any time before January 1, 1977 was occupied for loft, commercial or manufacturing purposes may be used for joint living-work quarters for artists or general residential purposes (Multiple Dwelling Law § 277; see also § 277 [7] [b]). Unlike the building in Saul, the subject building has a certificate of occupancy for residential use. In addition, the building in Saul was in zoning district M1-5B, which allows only manufacturing uses, and the subject building is in zoning district M1-5, which

allows both residential and nonresidential uses. Thus, Supreme Court should have granted plaintiff summary judgment on the first cause of action to the extent of enjoining defendants from requiring, as a condition for processing any application for the sale of plaintiffs' unit, that the proposed buyer be told that he or she must be certified as a JAR by the City Department of Cultural Affairs.

The court correctly granted defendants' motion for summary judgment dismissing the second and third causes of action to the extent they allege that the board's imposition of various conditions before it would process any application for the sale of plaintiffs' unit constituted a breach of fiduciary duty. Except for the JAR, these conditions are covered by the business judgment rule. However, since the board's decision on the JAR issue was clearly erroneous, the court improperly granted defendants' motion for summary judgment on their second and third causes of action to the extent plaintiffs seek damages for breach of fiduciary duty on the basis of defendants' imposition of such condition for their approval of the sale of plaintiffs' shares. There is at least a triable issue of fact whether it was made in good faith, since the board president relied on the advice of the building's architect (see Matter of Folic [Hockert—25 E. 86th St. Corp.], 139 AD2d 456, 457-458 [1988]).

However, the third cause of action was properly dismissed to the extent it alleges breach of fiduciary duty on the president's statements. The statements do not amount to a tort separate from the disapproval of the sale (see Kravtsov v Thwaites Terrace House Owners Corp., 267 AD2d 154, 155 [1999]). As for the board, plaintiffs failed to raise a triable issue of fact whether the board (through its president) acted in bad faith by making certain statements to the prospective buyer's attorney.

With regard to plaintiffs' tenth cause of action, plaintiffs' submissions on their initial summary judgment motion raised an issue of fact whether defendant president's use of her unit as a ballet studio should be enjoined: While dance studios are in zoning use group 8, the certificate of occupancy for the subject building states that it is in zoning use group 2 (residential use). Therefore, the court should not have granted defendants' motion for summary judgment dismissing the tenth cause of action. However, it correctly denied plaintiffs' motion for summary judgment on that cause of action, since defendants submitted some evidence that a ballet studio constitutes JAR use.

The court should not have granted defendants' motion for summary judgment dismissing the ninth cause of action, which

alleges that they breached their fiduciary duty by refusing to approve plaintiffs' plans to renovate their unit. Plaintiffs raised triable issues of fact whether defendants withheld their consent due to malice or vendetta and whether they discriminated against plaintiffs (see 40 W. 67th St., 100 NY2d at 157).

The court properly reinstated, upon reargument, plaintiffs' thirteenth cause of action (see Foley v Roche, 68 AD2d 558, 567 [1979]). In its original decision, the court said there was no basis for plaintiffs to seek attorneys' fees (the thirteenth cause of action) because, according to section 28 of the proprietary lease, only the board was entitled to such fees. However, a basis is provided by the complaint, which plaintiffs submitted on their motion for partial summary judgment. It specifically mentions Real Property Law § 234, which provides for reciprocal rights for attorneys' fees. It alleges that the use of the president's unit as a dance studio is not permitted by the proprietary lease and it implies that the board is unreasonably withholding its consent for plaintiffs' renovation, a breach of lease section 21 (a). As for the board's motion for summary judgment on its fifth counterclaim (for attorneys' fees), at this point it is premature to decide if the board is the prevailing party (see e.g. Board of Mgrs. of 55 Walker St. Condominium v Walker St., 6 AD3d 279 [2004]).

Finally, the court properly found that the board was entitled to partial summary judgment on its first counterclaim. The court properly denied the portion of the first counterclaim seeking to compel plaintiffs to release the escrow funds because material questions of fact exist as to what, if any, obligations are imposed on plaintiffs with respect to the release of said funds. However, the court properly granted the part of the first counterclaim seeking a declaration that the coop is entitled to enter and examine the roof and an injunction against plaintiffs from interfering with such access. Concur—Andrias, J.P., Friedman, Renwick, DeGrasse and Abdus-Salaam, JJ. **[Prior Case History: 2010 NY Slip Op 30755(U).]**