**IN THE COURT OF APPEALS OF IOWA**

No. 15-0587
Filed August 31, 2016

**PHEASANT HILLS ELDRIDGE CONDOMINIUM
OWNERS AND FACILITIES ASSOCIATION,**
     Plaintiff-Appellee,

**vs.**

**CHARLES W. RAY,**
     Defendant-Appellant.
_____

     Appeal from the Iowa District Court for Scott County, Marlita A. Greve,

Judge.


     Charles Ray appeals an order in favor of a condominium owners'

association that terminated his right to occupy, use, or control his unit and

ordered a sale of the unit.  **AFFIRMED.**


     Paul J. Bieber of Gomez May, L.L.P., Davenport, for appellant.

     Marc Gellerman, Bettendorf, for appellee.


     Considered by Vaitheswaran, P.J., and Doyle and Mullins, JJ.

**VAITHESWARAN, Presiding Judge.**

Condominium owner Charles Ray appeals an order in favor of the condominium owners' association that terminated his right to occupy, use, or control his unit and ordered a sale of the unit. Ray contends (1) the association failed to prove it served proper notice of the meeting at which the forced-sale amendment to the bylaws was approved; (2) the association's attempt to force the sale of his unit was not reasonable; and (3) principles of equity did not allow the forced sale.

## I. *Background Facts and Proceedings*

Ray purchased a unit at Pheasant Hills Condos in Eldridge, Iowa, and lived there for decades. Ray was not a model neighbor. He repeatedly allowed liquids to permeate the ceiling of the unit below him; placed personal belongings in common areas; sprayed water on a common deck, which splashed into another unit; offended a resident by retrieving mail in his underwear; stole mail—a crime for which he was convicted; and possessed a cache of firearms as a felon—a crime for which his probation was revoked. He also failed to pay his dues on time, generated mold within his unit, created fire hazards inside and outside his unit, and failed to maintain his garage.

The Pheasant Hills homeowners' association regulated owner conduct through its bylaws, which were periodically amended. One of the amendments authorized involuntary sales of units if owners "violate[d] any of the covenants or restrictions or provisions of this Declaration, the By-laws or the regulations adopted by the Association."

Over the years, the association sent Ray notices of bylaw violations but had limited success in gaining compliance. Eventually, the association sent Ray a thirty-day notice to cure the violations and, when not cured, served him with a ten-day notice to terminate his ownership rights. The association followed up with an "application for injunction relief," seeking an order requiring him to "sell his unit and immediately terminate his occupancy." Ray did not file an answer or personally appear at trial, although an attorney appeared on his behalf. Following trial, the district court entered a "decree of mandatory injunction" terminating Ray's interest in the property, ordering a sale of the unit, and enjoining Ray from reacquiring his interest. Ray appealed.

## II. Standard of Review

The association argues for de novo review. At first blush, this would appear to be the appropriate standard, given its request for the equitable remedy of injunctive relief. *See Max 100 L.C. v. Iowa Realty Co.*, 621 N.W.2d 178, 181 (Iowa 2001) (stating "[g]enerally, the issuance of an injunction invokes the equitable powers of the court," and "[g]enerally, our standard of review for the issuance of injunctions is de novo"). However, the district court analyzed the action as a breach-of-contract case, which is a law action. *See Oberbillig v. W. Grand Towers Condo. Ass'n*, 807 N.W.2d 143, 149-50 (Iowa 2011) (applying general rule of contracts to construe bylaws of condominium association). Accordingly, our review is at law, with fact-findings binding on us if supported by substantial evidence. *Id.* at 149; *see also Harrington v. Univ. of N. Iowa*, 726 N.W.2d 363, 365 (Iowa 2007) ("[T]he existence of a request for an injunction does not alter our conclusion that this matter was tried as a law action.").

### III. Notice

Ray contends, the association "does not have a copy of the notice given of the meeting at which the forced sale amendment was approved and cannot prove it complied with the 'terms and conditions' of the contract." The district court found otherwise, stating: "The uncontroverted evidence and these exhibits provide that proper notice and voting was done to properly amend the By-laws. Ray never challenged the legality of these amendments." Substantial evidence supports this finding. As noted, the bylaws were amended to add a provision on the involuntary sale of units. The amendment, filed with the Scott County Recorder in 2001, stated it was passed following "notice to said owners and directors specifically called for the purpose of considering the amendments to the By-Laws."

The association's action against Ray was filed thirteen years later. He furnished no evidence the notice of the proposed amendment was deficient. The most Ray could muster was an admission from an elderly resident that she did not recall how the notice was provided. The district court reasonably found the evidence uncontroverted on the question of pre-amendment notice to unit owners.

### IV. Whether the Forced Sale was Reasonable

Ray contends the association acted unreasonably in attempting to force the sale of his unit. In his view, "[t]he restrictions upon which the association[']s case is based do not clearly prohibit much of [the] behavior the plaintiffs['] witnesses complain about; it cannot be said the intent to prohibit the conduct is clear."

To the contrary, the bylaws contained detailed and specific restrictions on owner conduct:

> Restrictions on Use of Apartments: In order to provide for congenial occupancy of the property and for the protection of the values of the apartments, the use of the property shall be restricted to and shall be in accordance with the following provisions:
> a) The apartments shall be used for residential purposes only, except as reserved to the Declarant for sales or administrative purposes, or except as reserved in the Declaration.
> b) Garages must be used for the storage of motor vehicles and other miscellaneous storage purposes.  Such use shall be in a neat and clean manner consistent with their purpose as residential garages accessory to home ownership.
> c) The common areas shall be used only for the purposes for which they are intended.
> d) No nuisances shall be allowed in the property nor any use or practice which is a source of annoyance to residents or which interferes with the peaceful possession and proper use of the property by its residents.
> e) No immoral, improper or offensive or unlawful use shall be made of the property or any part thereof, and all valid laws, zoning ordinances and regulations of all governmental bodies having jurisdiction thereof shall be observed.  Provisions of the law, orders, rules, regulations or requirements of any governmental agency having jurisdiction thereof relating to any portion of the property shall be complied with, by and at the sole expense of the apartment owners or the Board of Directors, whichever shall have the obligation to maintain or repair such portion of the property.
> f) A portion less than a whole apartment shall not be rented, and no transient tenants may be accommodated.
> g) No household pets shall be kept in any apartment.  This paragraph shall not apply to fish or birds which are not regarded as household pets for purposes hereof.
> h) The Declarant may make such use of the unsold apartments and the common areas as may facilitate completion and sale, including but not limited to maintenance of a sales office, the showing of the property and the displays of signs.

The only arguably ambiguous portion relevant here was subparagraph (e), prohibiting "immoral, improper or offensive" conduct.  But most of Ray's conduct fell within the clear and unambiguous prohibition on engaging in "unlawful" conduct, a prohibition he routinely violated.

Even if interpretation of the bylaws were a prerequisite to finding a bylaw violation, the business judgment rule would require us to defer to the association's interpretation. *See Oberbillig*, 807 N.W.2d at 155-56. That rule "severely limit[s] second guessing of business decisions which have been made by those whom the corporation has chosen to make them," absent a showing of self-dealing or a conflict of interest. *Id.* (citation omitted); *see also 40 W. 67th St. Corp. v. Pullman*, 790 N.E.2d 1174, 1179-80 (N.Y. 2003) ("In the realm of cooperative governance and in the lease provision before us, the cooperative's determination as to the tenant's objectionable behavior stands as competent evidence necessary to sustain the cooperative's determination. If that were not so, the contract provision for termination of the lease—to which defendant agreed—would be meaningless."). No such showing was made here. *See Pullman*, 790 N.E.2d at 1181 ("By not appearing or presenting evidence personally or by counsel, defendant failed to challenge the findings and has not otherwise satisfied us that the Board has in any way acted ultra vires."). The association reasonably interpreted and applied its bylaws in deciding to seek an involuntary sale of Ray's condominium unit. *See 4215 Harding Rd. Homeowners Ass'n v. Harris*, 354 S.W.3d 296, 307-08 (Tenn. Ct. App. 2011) (concluding judicial sale of condominium unit was an appropriate remedy based in part on unit owner's denial of problem, association's "repeated and generous efforts over more than a year to help remedy the problem," unit-owner's "continuing failure to remedy the situation," "the gravity of the nuisance," and "its impact on other residents"); *see also Pullman*, 790 N.E.2d at 1181 (stating defendant failed to show "the Board's purpose was anything other than furthering the overall welfare

of a cooperative that found it could no longer abide defendant's behavior"); Michael C. Kim, *Involuntary Sale: Banishing an Owner from the Condominium Community*, 31 J. Marshall L. Rev. 429, 436 (1998) ("[T]here is no apparent statutory bar against the involuntary sale remedy but that remedy must be applied in light of the overall condominium theme of cooperative property ownership and operations."). We discern no error in the district court's approval of the association's request.

## V.     Whether Principles of Equity Allow the Forced Sale

In a variation of its previous argument, Ray contends the association "skipped the incremental approach and went directly to the most radical remedy," an approach which—in his view—"is inconsistent with the principles of equity required by the Iowa Supreme Court." Because the district court tried and decided the case as a law action, we find it unnecessary to decide whether equity militated in favor of a more measured remedy.

We affirm the district court order and judgment.

**AFFIRMED.**