Jazwinski v Justice Ct. Mut. Hous. Coop. (2025 NY Slip Op 50282(U))

[*1]

Jazwinski v Justice Ct. Mut. Hous. Coop.

2025 NY Slip Op 50282(U)

Decided on March 5, 2025

Supreme Court, Queens County

Livote, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on March 5, 2025
Supreme Court, Queens County

Richard Jazwinski, Jessie Yang, petitioner,

against
Justice Court Mutual Housing Cooperative, Fang Yuan, Jia Chong, Charlie Zee, Chunyi Shen, Betty Ortiz, Tanya Zaborsky, Alex Privo, respondent.

Index No. 702707/2024

Petitioners' Attorney
Troia & Associates
By: Andrew F. Troia, Anthony Philip Petruzzi 
59 Maiden Lane, 41st Floor
New York, New York 10038
(212) 390-8750 
Emails: apetruzzi@aftlaw.net, at@aftlaw.net
Defendants' Attorney
Norris McLaughlin, P.A. 
By: Dean Michael Roberts 
7 Times Square, 21st Floor 
New York, New York 10035 
(917) 369-8853 Email: dmroberts@norris-law.com

Leonard Livote, J.

The following numbered papers read on the application by the petitioners, brought by order to show cause pursuant to Business Corporation Law § 619, for an order, among other things, declaring that the October 10, 2023, election of the Board of Directors of the respondent Justice Court Mutual Housing Cooperative was improperly conducted.
Papers Numbered
Order to Show Cause — Affidavits — Exhibits EF 6-16
Answering Affidavits — Exhibits EF 27-35 Upon the foregoing papers it is ordered that the application is determined as follows:
The petitioners initiated this proceeding on February 5, 2024, seeking, among other things, to set aside the election of the Board of Directors for the respondent Justice Court Mutual Housing Cooperative (the cooperative) that occurred during the cooperative's October 10, 2023 annual meeting. The petition alleges that the petitioners are shareowners of the cooperative who sought to be elected to its Board of Directors in 2023. According to the petitioners, the cooperative did not hold an annual meeting or an election for the Board of Directors in 2020, 2021, or 2022, purportedly due to COVID restrictions. Thus, the petitioners allege that, by the time the annual meeting and election of directors was reinstated in 2023, the terms of all seven of the cooperative's directors had expired. In the petitioners' view, this required that all seven positions on the Board of Directors be put up for election in 2023. Yet this is not what the petitioners allege to have occurred. Rather, the petitioners allege that only four of the seven positions on the Board of Directors were made open for election. The petition alleges that this process was not permitted by the cooperative's bylaws because they require an entirely new Board of Directors be elected in this situation. The petition further alleges that, had their proposed procedure been followed, the petitioners would have been elected to the Board of Directors, as they received the fifth and sixth-most votes during the October 10, 2023 annual meeting.
The first cause of action in the petition seeks declaratory relief recognizing the petitioners, among others, as duly elected members of the Board of Directors. The second cause of action seeks to compel the cooperative to comply with the petitioners' access to the cooperative's records, pursuant to Business Corporation Law § 624. The third cause of action seeks an award of attorneys' fees.
Shortly after initiating this proceeding, the petitioners submitted the instant application, seeking a declaration
"that the election of the Board of Directors conducted at the Annual Meeting of the Shareholders on October 10,2023 resulting in the election of only four (4) Directors [*2]rather than the required seven (7) directors as stated in the Bylaws of the Cooperative was improper, and that the alleged new Board of Directors should hereafter consist of the candidates receiving the seven (7) highest vote totals pursuant to the certified results of the subject election" (NY St Cts Elec Filing [NYSCEF] Doc No. 16).
In pursuing this relief under Business Corporation Law § 619, the petitioners effectively seek a judgment in their favor on their first cause of action. In support of their application, the petitioners rely on, among other things, the affidavit of the petitioner Richard Jazwinski, the cooperative's bylaws, and a September 18, 2023 notice to the cooperative's shareholders. The petitioners' moving papers effectively re-state the factual contentions set forth in the petition and assert that, although the respondents Betty Ortiz, Tanya Zaborsky, and Alex Privo are improperly being held out as members of the cooperative's Board of Directors, as their terms expired well before the cooperative's 2023 annual meeting and their positions were not put up for election.
The respondents oppose the application and submit, among other things, the cooperative's bylaws, and the September 18, 2023 notice, and the affidavit of the respondent Chunyi Shen, the president of the cooperative's Board of Directors. Based on these submissions, the respondents assert that the petitioners' application should be denied because the respondents' actions are shielded by the business judgment rule. The respondents contend that the decision to only put four of the seven director positions up for election at the 2023 annual meeting was a good-faith effort to restore the cooperative's staggered election cycle. The respondents note that, prior to 2019, only two or three positions on the Board of Directors would be put up for election in any given year. However, in the respondents' view, the bylaws do not contain any provisions which controlled the manner and method of annual meetings and director elections in the face of of the various COVID-related restrictions that were in place between 2020 and 2022. Thus, the respondents assert that, following several years where these restrictions prevented elections from taking place, a plan was developed which, by 2026, would return the annual meeting and election of directors to their pre-2020 procedures while also maintaining the continuity of the Board of Directors during this period. The petitioners submitted a reply. However, a reply is not permitted on an order to show cause, and thus, it has not been considered.
Business Corporation Law § 619 states that,
"Upon the petition of any shareholder aggrieved by an election, and upon notice to the persons declared elected thereat, the corporation and such other persons as the court may direct, the supreme court at a special term held within the judicial district where the office of the corporation is located shall forthwith hear the proofs and allegations of the parties, and confirm the election, order a new election, or take such other action as justice may require" (Business Corporation Law § 619).
A special proceeding brought pursuant to section 619 is the "exclusive method available to a shareholder to test the validity of an election of a director" (Chiulli v Reiter, 130 AD2d 617, 618 [2d Dept 1987]). Critically, however, even if the court were to find improprieties with respect to the challenged election, it "may not be set aside unless the court concludes further that the result would have been different had no such improprieties" existed, "or that an inequitable result has been thereby produced" (Goldfield Corp. v. General Host Corp., 29 NY2d 264, 271 [*3][1971]).
Here, however, the petitioners do not assert that the October 2023 election involved any irregularities that would place this matter within the purview of section 619. For example, the petitioners do not allege that the annual meeting was not properly noticed to the shareowners (see Cylich v Riverbay Corp., 74 AD3d 646 [1st Dept 2010]), that there was no quorum at the annual meeting (see Singleton v Morton, 199 AD3d 437 [1st Dept 2021]), that certain votes should not have been tallied (see Valyrakis v 346 W. 48th St. Hous. Dev. Fund Corp., 161 AD3d 404 [1st Dept 2018]), or that a particular director did not receive a sufficient number of votes (see Lipton v Wachtler, 19 AD3d 212 [1st Dept 2005]). To the contrary, the petitioners take issue with the cooperative's decision to only put four of the seven director positions up for election, which was made well in advance of the October 2023 annual meeting and election of directors. Thus, as the respondents correctly contend, this decision is analyzed under the scope of the business judgment rule.
"[T]he business judgment rule is the proper standard of judicial review when evaluating decisions made by residential cooperative corporations" (40 W. 67th St. Corp. v Pullman, 100 NY2d 147, 149-150 [2003]). "In the context of cooperative dwellings, the business judgment rule provides that a court should defer to a cooperative board's determination '[s]o long as the board acts for the purposes of the cooperative, within the scope of its authority and in good faith' " (40 W. 67th St. Corp., 100 NY2d at 153, quoting Matter of Levandusky v One Fifth Ave. Apt. Corp., 75 NY2d 530, 538 [1990]). "To trigger further judicial scrutiny, an aggrieved shareholder-tenant must make a showing that the board acted (1) outside the scope of its authority, (2) in a way that did not legitimately further the corporate purpose or (3) in bad faith" (40 W. 67th St. v Pullman, 100 NY2d at 155; see Matter of In re Dicker v Glen Oaks Vil. Owners, Inc., 153 AD3d 1399, 1402 [2d Dept 2017]). " 'Absent a showing of fraud, self-dealing or unconscionability, the court's inquiry is so limited and it will not inquire as to the wisdom or soundness of the business decision' " (Board of Mgrs. of Fishkill Woods Condominium v Gottlieb, 184 AD3d 785, 789 [2d Dept 2020], quoting Schoninger v Yardarm Beach Homeowners' Assn., 134 AD2d 1, 9 [2d Dept 1987]).
Here, the petitioners failed to meet this burden (see Levy v 103-25 68th Ave. Owners, Inc., 223 AD3d 728, 730 [2d Dept 2024]). Article V, section 3 of the cooperative's bylaws state that:
"At the first annual meeting of the members, three classes of directors shall be elected consisting of Class 1, Class 2, and Class 3, to serve for terms of one year, two years and three years respectively. The number of directors in each class shall be as equal in number as possible. At the expiration of the initial term of office for each respective Director, his successor shall be elected to serve a term of three years. The directors shall hold office until their successors have been elected and had their first meeting" (NY St Cts Elec Filing [NYSCEF] Doc No. 10).
The petitioners interpret this section to mean that, when re-starting the election process after a period where no election of directors takes place over several years, the process should have been treated as an equivalent to the "first annual meeting" described in the bylaws, whereby all seven director positions are put up for election, each for varying term lengths. Conversely, the respondents argue that this provision is irrelevant to the situation presented to [*4]the cooperative, as the bylaws are silent as to what should be done when annual meetings and director elections are not held or what should occur when large-scale emergencies such as the COVID-19 pandemic prevent the cooperative from regularly conducting its business.
The cooperative's bylaws constitute a contract, and therefore, the document is subject to the principles of contract interpretation (see Bd. of Managers of Half Moon Bay Mar. Condominium v Bd. of Directors of Half Moon Bay Homeowners Assn., Inc., 186 AD3d 1679, 1680 [2d Dept 2020]; Weiss v Bretton Woods Condominium II, 151 AD3d 905, 906 [2d Dept 2017]). "[When parties set down their agreement in a clear, complete document, their writing should . . . be enforced according to its terms" (W.W.W. Assoc. v Giancontieri, 77 NY2d 157, 162 [1990]). Thus, "courts should be extremely reluctant to interpret an agreement as impliedly stating something which the parties have neglected to specifically include" (Rowe v Great Atl. & Pac. Tea Co., 46 NY2d 62, 72 [1978]).
Here, the court agrees with the respondents' contention that the cooperative's predicament leading up to the 2023 annual meeting was not expressly covered by the bylaws, as the document does not set forth a procedural mechanism for holding an annual meeting and election of directors where same had not been held for several years. Thus, to the extent that the petitioners seek to apply the provision of the bylaws regarding the "initial annual meeting" to the October 2023 annual meeting and election of directors, this interpretation is impermissible under these circumstances. The court "may not by construction add or excise terms, nor distort the meaning of those used and thereby make a new contract for the parties under the guise of interpreting the writing" (see Reiss v Financial Performance Corp., 97 NY2d 195, 199 [2001]). The petitioners therefore failed to demonstrate that, by holding four of the seven director positions up for election, the cooperative acted beyond the scope of its authority.
The petitioners also failed to demonstrate that the procedure for the October 2023 election of directors did not legitimately further the cooperative's corporate purpose. The September 18, 2023 notice to the cooperative's shareowners notes that "[t]he By-Laws provide for a Board of seven Directors each Director elected to three-year terms," and that "the directorships are scheduled so that three Directors are open in one year followed by two directorships being open in the following two years," so that "shareholders are provided the opportunity to vote annually for Directors while at the same time ensuring continuity with the membership of the Board of Directors" (NY St Cts Elec Filing [NYSCEF] Doc No. 11). The notice goes on to state that, of the four director positions that would be put up for election in 2023, two would be for three-year terms, one would be for a two-year term and the fourth would be for a one-year term. "Thereafter, at the 2024 annual meeting three seats will be up for election and all of those seats will be for three-year terms. Thereafter, there will be two seats open for the 2025 annual meeting and two seats open for election at the 2026 annual meeting" (id.). Thus, the purpose of only having four director positions put up for election was to allow the current directors to serve similar terms relative to each other while also phasing in the staggered election of directors.
Finally, to the extent that the petitioners assert that the decision to only have four director positions put up for election was made in bad faith, their assertions regarding "irreversible decisions regarding the maintenance and financial condition of the cooperative" (NY St Cts Elec Filing [NYSCEF] Doc No. 8) are speculative and conclusory (see Young v 101 Old Mamaroneck Rd. Owners Corp., 211 AD3d 771, 775 [2d Dept 2022]; Patel v Gardens at Forest Hills Owners Corp., 181 AD3d 611 [2d Dept 2020]).
Accordingly, it is
ORDERED that the petitioner's application is denied.
Dated: March 5, 2025
J.S.C.