[948 NYS2d 263]

Alphonse Fletcher, Jr., et al., Respondents, v The Dakota, Inc., et al., Appellants, et al., Defendants.

First Department, July 3, 2012

## APPEARANCES OF COUNSEL

*Quinn Emanuel Urquhart & Sullivan, LLP*, New York City (*Christine H. Chung, Jake M. Shields* and *Maaren A. Choksi* of counsel), and *Balber Pickard Maldonado & Van Der Tuin, PC*, New York City (*John Van Der Tuin* of counsel), for appellants.

*Vladeck, Waldman, Elias & Engelhard, P.C.*, New York City (*Milton L. Williams, Jr.* and *Maia Goodell* of counsel), and *Kasowitz, Benson, Torres & Friedman LLP*, New York City (*Marc E. Kasowitz, David E. Ross, Trevor J. Welch* and *Kanchana Wangkeo Leung* of counsel), for respondents.

OPINION OF THE COURT

Acosta, J.

Plaintiff Alphonse Fletcher, Jr., an African-American resident of defendant coop the Dakota, alleges that the Dakota and, as relevant to this appeal, two of its directors (defendants Barnes and Nitze) discriminated against him, inter alia, on the basis of race in refusing to approve his purchase of an apartment adjacent to one he owns for the purpose of combining the two. According to Fletcher, the case is about retaliation against him for sticking up for the rights of others, including minority and Jewish shareholders and applicants at the Dakota, and then to further defame him when he brought the discriminatory conduct to light.

 Prior to discussing the relevant causes of action, we address individual board member liability in the context of discriminatory acts, and clear up an element of possible confusion in this area of law that may arise out of this Court's decision in *Pelton v 77 Park Ave. Condominium* (38 AD3d 1 [2006]). In short, although participation in a breach of contract will typically not give rise to individual director liability, the participation of an individual director in a corporation's tort is sufficient to give rise to individual liability.

Turning to the contentions on appeal, defendants argue that all claims should be dismissed as against Nitze and Barnes because the complaint fails to allege that they engaged in any acts separate and distinct from actions they took as board members. The claims that remain as against Nitze that we must address are breach of fiduciary duty (first cause of action) insofar as it is based on allegations of defamation, and defamation (fifth cause of action). As to Barnes, the remaining causes of action are the first insofar as it is based on defamation, the sixth and eighth, which allege discrimination under the New York State and City Human Rights Laws, the seventh and ninth, which allege retaliation in violation of the State and City Human Rights Laws, respectively, the tenth, which alleges a violation of the Civil Rights Law, and the eleventh, which alleges tortious interference with contract. Since defendants are not challenging the motion court's ruling that the discrimination-based claims (the sixth, eighth and tenth) otherwise fail to state a cause of action, but only that they fail to allege independent conduct on Barnes's part, we begin with those claims.

The provisions of the State Human Rights Law (State HRL) that proscribe discrimination in housing apply not only to the

"owner" of the housing, but also to a "lessee, sub-lessee, assignee, or managing agent of, or other person having the right to sell, rent or lease a housing accommodation . . . or any agent or employee thereof" (Executive Law § 296 [5] [a]). The City Human Rights Law (City HRL) similarly provides for individual liability (Administrative Code of City of NY § 8-107 [5]). Although both statutes contain exceptions to their housing coverage (*compare* Executive Law § 296 [5] [a] *with* Administrative Code of City of NY §§ 8-107 [5] [a] [4]; [g]-[m], [o]), there are no exemptions in either statute for directors or officers of a coop or any other corporation. The anti-retaliation sections of both statutes also provide for individual liability with no exemption for corporate directors or officers (*see* Executive Law § 296 [7]; Administrative Code of City of NY § 8-107 [7]).[1] Individual director and officer liability is also consistent with the limitations on the "business judgment" rule as enunciated by the Court of Appeals.

In *Matter of Levandusky v One Fifth Ave. Apt. Corp.* (75 NY2d 530 [1990]), the Court of Appeals held that the "business judgment" rule was the correct standard of judicial review of the actions of the directors of a cooperative corporation. That "rule prohibits judicial inquiry into [the] actions of corporate directors taken in good faith and in the exercise of honest judgment in the lawful and legitimate furtherance of corporate purposes" (*id.* at 537-538 [internal quotation marks omitted]). The Court, however, cautioned that "the broad powers of a cooperative board hold potential for abuse through arbitrary and malicious decisionmaking, favoritism, discrimination and the like" (*id.* at 536). In *40 W. 67th St. v Pullman* (100 NY2d 147, 157 [2003]), the Court of Appeals "reaffirm[ed] [*Levandusky's*] admonition and stress[ed] that *those types of abuses are incompatible with good faith and the exercise of honest judgment.* While deferential, the *Levandusky* standard should not serve as a rubber stamp for cooperative board actions" (emphasis added). Thus, arbitrary or malicious decision making or decision making tainted by discriminatory considerations is not protected by the business judgment rule.

---

1. The State HRL prohibits retaliation by "any person engaged in any activity to which this section applies" (Executive Law § 296 [7]); "person" includes "one or more individuals" (Executive Law § 292 [1]). The City HRL prohibits retaliation by "any person engaged in any activity to which this chapter applies" (Administrative Code § 8-107 [7]); "person" includes "one or more natural persons" (Administrative Code § 8-102 [1]).

Nothing in the holding or reasoning of either *Levandusky* or *Pullman* suggests that there is a safe harbor from judicial inquiry for directors who are alleged to have engaged in conduct not protected by the business judgment rule. Moreover, there is no principle of corporate law that director liability arises only where the director commits a tort independent of the tort committed by the corporation itself. On the contrary, it has long been held by this Court that "a corporate officer who participates in the commission of a tort may be held individually liable, . . . regardless of whether the corporate veil is pierced" (*Peguero v 601 Realty Corp.*, 58 AD3d 556, 558 [2009] [internal quotation marks omitted], quoting *Espinosa v Rand*, 24 AD3d 102, 102 [2005], quoting *American Express Travel Related Servs. Co. v North Atl. Resources*, 261 AD2d 310, 311 [1999]; *Savannah T & T Co., Inc. v Force One Express Inc.*, 58 AD3d 409 [2009]; *cf. Polonetsky v Better Homes Depot*, 97 NY2d 46, 55 [2001] ["In actions for fraud, corporate officers and directors may be held individually liable if they participated in or had knowledge of the fraud, even if they did not stand to gain personally"]; *Marine Midland Bank v Russo Produce Co.*, 50 NY2d 31, 44 [1980], citing *Lippman Packing Corp. v Rose*, 203 Misc 1041, 1044 [1953] [which noted, even then, that "a long list of cases . . . ha(d) . . . held that the officers, directors and agents of a corporation are jointly and severally liable for torts committed on behalf of a corporation and the fact that they also acted on behalf of the corporation does not relieve them from personal liability"]).

A leading treatise on corporations states that a director may be held individually liable to third parties for a corporate tort if he either participated in the tort or else "directed, controlled, approved, or ratified the decision that led to the plaintiff's injury" (*see* 3A Fletcher, Cyclopedia of Corporations § 1135). This rule protects individual board members who did not participate or aid and abet the tortfeasors from being held vicariously liable for the tortfeasors' action.

■ Nevertheless, defendants contend that this Court's decision in *Pelton v 77 Park Ave. Condominium* (38 AD3d 1 [2006]) requires that the discrimination claims be dismissed as against Barnes. In *Pelton*, the plaintiff brought a disability discrimination claim, under the City HRL, against his condominium and the individual members of the board of managers based on their alleged failure to properly accommodate his disability. This Court granted summary judgment dismissing the action against

the individual board members, reasoning that (1) the *Levandusky* standard was not satisfied, and (2) the plaintiff failed to allege "independent tortious conduct" by the individual defendants "in order to overcome the public policy that supports the business judgment rule" (*id.* at 10). However, there are two problems with this reasoning. First, as discussed above, the *Levandusky* rule will not protect a board member where he engages in discriminatory conduct. Second, *Pelton* takes a rule that applies where a cooperative or condominium board is alleged to have breached a contractual obligation, and incorrectly applies it where a board allegedly engaged in the intentional tort of discrimination. That is, *Pelton* failed to disentangle the principles of individual corporate director liability in the breach of contract context (understood to provide a shield against liability) from the principles applicable to tort cases (where there is no such shield). As authority for our holding in *Pelton*, we cited *Murtha v Yonkers Child Care Assn.* (45 NY2d 913 [1978]). We now find, however, that our reliance on *Murtha* was misplaced, and we therefore decline to follow the pleading rule articulated in *Pelton*.

*Murtha* is a breach of contract case in which the Court of Appeals stated that a corporate officer will not be held liable for inducing the breach of a contract between the corporation and a third party if he committed no "independent torts or predatory acts" (45 NY2d at 915). The Court had no occasion to hold, or even suggest that a director would not be held liable for a tort committed by the corporation if he had not committed a tort independent of that tort. In *Brasseur v Speranza* (21 AD3d 297 [2005]), which the *Pelton* Court cited as an example of a *Murtha* pleading failure, we dismissed a breach of fiduciary duty claim against individual board members because "there is no allegation that they breached a duty *other than, and independent of, those contractually imposed upon the board*" (*id.* at 298 [emphasis added]). Moreover, we find that the *Pelton* pleading rule conflicts with Court of Appeals' warning that discrimination, among other abusive practices, is not protected by the business judgment rule (*see Levandusky*, 75 NY2d at 536; *Pullman*, 100 NY2d at 157). It also is inconsistent with the Court of Appeals' recent instruction that "we must construe Administrative Code § 8-107 (7), like other provisions of the City's Human Rights Law, broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible" (*Albunio v City of New York*, 16 NY3d 472, 477-478 [2011]). Thus, we

decline to dismiss the sixth, eighth and tenth causes of action as against defendant Barnes.

Defendants contend that the retaliation claims (the seventh and ninth causes of action) should be dismissed as against the Dakota and Barnes for failure to state a cause of action. The State HRL provides, in pertinent part, that "[i]t shall be . . . unlawful . . . to retaliate . . . against any person because he or she has opposed any practices forbidden under this article" (Executive Law § 296 [7]). To make out a claim of retaliation under the State HRL, the complaint must allege that (1) Fletcher engaged in a protected activity by opposing conduct prohibited thereunder; (2) defendants were aware of that activity; (3) he was subject to an adverse action; and (4) there was a causal connection between the protected activity and the adverse action (*Forrest v Jewish Guild for the Blind*, 3 NY3d 295, 312-313 [2004]).

The City HRL provides in, pertinent part, that "[i]t shall be . . . unlawful . . . to retaliate . . . in any manner against any person because such person has . . . opposed any practice forbidden under this chapter" (Administrative Code § 8-107 [7]). "The retaliation . . . complained of under this subdivision need not result in an ultimate action . . . or in a materially adverse change . . . [but] must be reasonably likely to deter a person from engaging in protected activity" (*id.*).

In interpreting the City HRL, we start from the premise that the Local Civil Rights Restoration Act requires that "we . . . construe Administrative Code § 8-107 (7), like other provisions of the City's Human Rights Law, broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible" (*Albunio v City of New York*, 16 NY3d 472, 477-478 [2011]).

> "[I]t is important that the assessment [of a retaliation claim] be made with a keen sense of [the] realities [of the circumstances surrounding the plaintiff], of the fact that the 'chilling effect' of particular conduct is context-dependent, and of the fact that a jury is generally best suited to evaluate the impact of retaliatory conduct in light of those realities" (*Williams v New York City Hous. Auth.*, 61 AD3d 62, 71 [2009], *lv denied* 13 NY3d 702 [2009]).

Thus, to make out a retaliation claim under the City HRL, the complaint must allege that: (1) Fletcher participated in a protected activity known to defendants; (2) defendants took an

action that disadvantaged him; and (3) a causal connection exists between the protected activity and the adverse action (*see Albunio v City of New York*, 67 AD3d 407, 413 [2009], *affd* 16 NY3d 472 [2011]).[2]

The complaint alleges that Fletcher began to oppose discrimination (or conduct that he perceived as discriminatory) after he was elected president of the coop board in May 2007. In or about September 2007, he complained to defendant Nitze that another board member's reference to certain applicants as "Jewish mafia" was "not appropriate." The applicants were initially rejected, although plaintiff and one other board member voted to approve. He further alleged that, "[a]lthough defendant Nitze tried to persuade Fletcher not to raise the issue again, Fletcher urged the Board to reconsider the couple's application 'on the record.'" The board granted the couple an interview, after which it approved the application.

■ Fletcher's protest that the "Jewish mafia" comment and the general tenor of the discussion about the Jewish couple's "ethnicity and religion" were inappropriate constitutes the kind of activity that is protected under the State HRL. Thus, the first element of a retaliation claim was alleged.

■ The second element was alleged with respect to defendant the Dakota. Since defendant Nitze was a director, his knowledge of Fletcher's activity is imputed to the Dakota (*see Baker v Latham Sparrowbush Assoc.*, 72 F3d 246, 255 [2d Cir 1995], citing inter alia *Matter of Brown*, 252 NY 366, 375-378 [1930]; *Keen v Keen*, 113 AD2d 964, 966 [1985], *lv dismissed* 67 NY2d 602 [1986]; *Texaco, Inc. v Weinberg*, 13 AD2d 1002 [1961]; *Richmond Hill Realty Co. v East Richmond Hill Land Co.*, 246 App Div 301, 305 [1936]). However, Barnes did not become a member of the board until May 2009, and plaintiffs do not allege that he was aware of Fletcher's protected activity. Thus, the seventh and ninth causes of action should be dismissed as against Barnes. However, since discovery may reveal that he was aware of Fletcher's protected activity, the dismissal as against Barnes should be without prejudice.

■ Plaintiffs' allegations that defendants "denied Fletcher the benefit of having the Transfer Disclosure Policy govern his

---

**2.** While we rely upon *Forrest* in addressing plaintiff's State HRL claim (because that case continues to be binding upon us in the context of State HRL claims), we do not rely upon *Forrest* with respect to plaintiff's City HRL claim since the City Council expressly rejected *Forrest's* application to claims brought under the City HRL when it enacted the Restoration Act (*see Bennett v Health Mgt. Sys., Inc.*, 92 AD3d 29, 35 n 1, citing *Williams*, 61 AD3d at 67).

application to purchase Apartment 50; (b) denied Fletcher the impartial, fair, and unbiased review of his financial disclosures; [and] (c) recommended rejection of Fletcher's application" are sufficient to establish that Fletcher was subjected to an adverse action, and satisfy the third prong of a retaliation claim.

■ The fourth prong is satisfied by plaintiffs' allegation that defendants took the above mentioned adverse action in retaliation for his efforts to defend victims of discrimination by them (*Hicks v Baines*, 593 F3d 159, 170 [2d Cir 2010]). The fact that the alleged retaliation commenced a substantial period of time after the protected activity was engaged in does not defeat the claim: Fletcher's application for approval to purchase apartment 50 in the early part of 2010 represented the first opportunity for retaliation (*see Bernhardt v Interbank of N.Y.*, 2009 WL 255992, *6, 2009 US Dist LEXIS 8173, *20 [ED NY 2009]; *McKenzie v Nicholson*, 2009 WL 179253, *5 n 5, 2009 US Dist LEXIS 5285, *19-22 n 5 [ED NY 2009]; *Batyreva v New York City Dept. of Educ.*, 2008 WL 4344583, *14 [SD NY 2008]; *Quinby v WestLB AG*, 2007 WL 1153994, *13, 2007 US Dist LEXIS 28657, *36-39 [SD NY 2007]).

Thus, we decline to dismiss as against the Dakota Fletcher's retaliation claims under the State and City HRLs to the extent they are based on his conduct with respect to the Jewish couple.

■ The complaint also alleges that Fletcher "made it clear" to the rest of the board that jokes about the number of times a certain shareholder would have to apply to fix her bathroom were inappropriate. Although the shareholder was African-American, the complaint does not allege that Fletcher made any reference to her race. Thus, it fails to state a cause of action under the State HRL for retaliation on the basis of Fletcher's conduct with respect to this shareholder (*see e.g. Forrest*, 3 NY3d at 313 [granting defendant summary judgment because "(a)lthough plaintiff filed numerous grievances claiming generalized 'harassment,' she never alleged that she was discriminated against because of race"]; *see Sullivan v Chappius*, 711 F Supp 2d 279, 287 [WD NY 2010] [dismissing complaint based on plaintiff's supervisor's extramarital affair]). Thus, the seventh and ninth causes of action should have been dismissed against the Dakota insofar as they are based on Fletcher's conduct with respect to the African-American shareholder. However, the dismissal is without prejudice, because following discovery, plaintiffs may be able to plead further details that would show that Fletcher was engaged in protected activity.

We note that under the City HRL, a jury may infer from other evidence that a plaintiff's activity is in fact opposition to discrimination even where the plaintiff does "not say [so] in so many words" (*see Albunio*, 16 NY3d at 479). However, even under the City HRL, a complaint drafted by counsel that contains 269 numbered paragraphs without alleging even on information and belief that defendants knew or should have known that Fletcher was opposing discrimination when he spoke to them about the African-American shareholder who intended to renovate her bathroom fails to state a cause of action for retaliation.

Because the Dakota is a corporation, it owes no fiduciary duty to its shareholders (*Peacock v Herald Sq. Loft Corp.*, 67 AD3d 442, 443 [2009]). Thus, although the Dakota sought to dismiss the first cause of action only to the extent it is based on defamation, we dismiss both the first and second causes of action in their entirety as against the Dakota, because the defectiveness of these claims is "apparent on the face of the record" (*see American Bldg. Contrs. Assoc., Inc. v Mica & Wood Creations, LLC*, 23 AD3d 322, 323 [2005] [internal quotation marks omitted]). Moreover, the dismissal is with prejudice.

As to Barnes and Nitze, they correctly argue that the first cause of action should be dismissed as against them because it fails to adequately plead violations of the individual directors' fiduciary duty (*Brasseur v Speranza*, 21 AD3d 297, 298 [2005]). However, since discovery may reveal such violations, the dismissal of the first cause of action as against them should be without prejudice.

The fifth cause of action alleges defamation and the first cause of action, which alleges breach of fiduciary duty, is based, in part, on allegations of defamation. To the extent these causes of action rely on statements contained in affidavits submitted in opposition to plaintiffs' preliminary injunction motion, they should be dismissed, with prejudice, because the statements are protected by both the judicial proceedings and fair report privileges (*Sexter & Warmflash, P.C. v Margrabe*, 38 AD3d 163, 171 [2007]; *Fishof v Abady*, 280 AD2d 417 [2001]). However, the first cause of action alleges that defendants breached their fiduciary duty to Fletcher by "knowingly and maliciously spreading false statements and rumors to third parties, including the media, concerning Fletcher's financial condition" and the fifth cause of action refers to statements made "[b]egining in April 2010," i.e., long before this action was commenced. Thus, these

causes of action do not rely exclusively on statements contained in affidavits.

Contrary to defendants' contention, the following allegedly defamatory statements are pleaded with sufficient particularity (CPLR 3016 [a]):

"[At an April 14, 2010 board meeting,] one or more of the Individual Defendants told the other members of the Board that Fletcher had not fulfilled binding charitable commitments and pledges, that Fletcher's assets were all illiquid and difficult to value, and that FAM's business loans left it over-extended and at risk of collapse . . .

"[On or before May 7, 2010, Nitze told Dakota shareholder Craig Hatkoff that Fletcher] had not actually given the money he had promised to give [to charity] and 'he owes it' . . .

"[At some point between June 24, 2010 and September 2010] one or more of the Individual Defendants falsely and maliciously stated to Hatkoff that Fletcher had 'checked out of his business' and was living on 'borrowed money' . . .

"On September 14, 2010, . . . the Board sent a letter to certain Dakota shareholders . . . [It stated, inter alia,] '[b]ased on the financial information submitted by Fletcher, the Board concluded that approving such a purchase would not be in the best interest of The Dakota' . . . [The letter] also contained the false and misleading statement that Fletcher had declined the Board's request to provide additional financial information."

While some of these allegations do not specify exactly which of the defendants made a particular statement, that is not a fatal defect (*see Torres v Prime Realty Servs.*, 7 AD3d 343, 344 [2004]; *see also Herlihy v Metropolitan Museum of Art*, 214 AD2d 250, 260 [1995]).

Defendants further contend that the above-quoted statements are covered by a qualified privilege and that the complaint fails to allege malice sufficient to defeat the privilege (*see Liberman v Gelstein*, 80 NY2d 429, 437 [1992]). Contrary to the latter contention, the complaint alleges malice. But, in any event, we would not "give conclusive effect to defendants' position of qualified privilege before any affirmative defense to that

effect was raised in a responsive pleading" (*see Acosta v Vataj*, 170 AD2d 348, 348-349 [1991]). Thus, we decline to dismiss as against the Dakota the fifth cause of action and so much of the first cause of action as it is based on allegations of defamation to the extent they do not rely on statements contained in affidavits.

As to Barnes and Nitze, since we are dismissing the first cause of action in its entirety as against them, we need not address the defamation-based part of the claim. We also decline to dismiss the fifth cause of action as against Nitze since he is alleged to have made defamatory statements about Fletcher to Hatkoff.

Contrary to defendants' contention, the tortious interference with contract claim states a cause of action by alleging tortious interference with Fletcher's contract to purchase apartment 50 from Ruth Proskauer Smith's estate (*Kronos, Inc. v AVX Corp.*, 81 NY2d 90, 94 [1993]).[3] Thus, we decline to dismiss the eleventh cause of action as against the Dakota. However, it should be dismissed as against Barnes, because the complaint does not allege that Barnes committed independent tortious conduct outside of his role as a board member (*see American-European Art Assoc. v Trend Galleries*, 227 AD2d 170, 171-172 [1996]). The dismissal is without prejudice since discovery may reveal evidence that would support a claim against Barnes in his individual capacity.

Accordingly, the order of the Supreme Court, New York County (Eileen A. Rakower, J.), entered July 27, 2011, which, insofar as appealed from, denied defendants the Dakota, Inc., Bruce Barnes, and Peter Nitze's motion to dismiss the first, second and fifth through eleventh causes of action as against the Dakota, the first and sixth through eleventh causes of action as against Barnes in his individual capacity, and the first and fifth causes of action as against Nitze in his individual capacity, should be modified, on the law, to dismiss the first cause of action as against the Dakota, with prejudice, and as against Barnes and Nitze, without prejudice; the second cause of action as against the Dakota, with prejudice; so much of the fifth cause of action as is based on statements made in defend-

---

3. We decline to consider defendants' argument that the cause of action fails because the Smith estate did not breached its contract with Fletcher, an element of the cause of action (the estate had the right to cancel the contract if the board refused to approve the sale), because it was raised for the first time in their reply brief.

ants' affidavits, with prejudice; so much of the seventh and ninth causes of action as are based on plaintiffs' conduct with respect to the African-American shareholder who wanted to renovate her apartment as against the Dakota, without prejudice; and the seventh, ninth and eleventh causes of action as against Barnes, without prejudice, and otherwise affirmed, without costs.

MAZZARELLI, J.P., SAXE, CATTERSON and ROMÁN, JJ., concur.

Order, Supreme Court, New York County, entered July 27, 2011, modified, on the law, to dismiss the first cause of action as against the Dakota, with prejudice, and as against Barnes and Nitze, without prejudice; the second cause of action as against the Dakota, with prejudice; so much of the fifth cause of action as is based on statements made in defendants' affidavits, with prejudice; so much of the seventh and ninth causes of action as are based on plaintiff Fletcher's conduct with respect to the African-American shareholder who wanted to renovate her apartment as against the Dakota, without prejudice; and the seventh, ninth and eleventh causes of action as against Barnes, without prejudice, and otherwise affirmed, without costs.