(February 11, 2016)

■ ESTATE OF HELEN DEL TERZO et al., Respondents-Appellants, v 33 FIFTH AVENUE OWNERS CORP., Appellant-Respondent. [25 NYS3d 154]—

Order and judgment (one paper), Supreme Court, New York County (Ellen M. Coin, J.), entered January 13, 2015, declaring that defendant's denial of plaintiffs' application to transfer shares allocated to a cooperative apartment and the proprietary lease appurtenant thereto from plaintiff Estate of Helen Del Terzo, to plaintiffs Michael Del Terzo and Julius Robert Del Terzo, constituted a breach of the lease, directing defendant to consent to the transfer, and awarding plaintiffs costs, and which brings up for review an order, same court and Justice, entered on or about September 30, 2014, which granted plaintiffs' motion for summary judgment on the first three causes of action, denied their motion for summary judgment on the fourth cause of action, and denied defendant's motion for summary judgment, modified, on the law, to the extent of granting plaintiffs summary judgment on the fourth cause of action for attorneys' fees, and remanding the matter for a hearing with respect thereto, and otherwise affirmed, without costs.

The central issue in this appeal is whether defendant, a residential cooperative corporation, violated the proprietary lease by unreasonably withholding its consent to an assignment of the lease and shares to a member of a lessee's family. We agree with the motion court that defendant violated the proprietary lease.

The Del Terzo family resided in apartments 5C and/or 5D since 1955, before plaintiffs Michael Del Terzo (Michael) and

Julius Robert Del Terzo (Robert) were born. In 1986, shortly after the building was converted to cooperative ownership, Michael and Robert's parents bought the apartments, becoming shareholders and proprietary lessees. The apartments had, by then, been combined into one apartment. Both sons lived in the apartment throughout their childhood and as young adults. Their father predeceased their mother, Helen Del Terzo, who continued to live in the apartment until her death in 2010. Robert moved back into the apartment, with his own family, in 2004, and still lives there with his wife and his cousin, who is Helen's adult nephew. Michael, now married with an adult child, lives in Lancaster, Pennsylvania, where he has an established medical practice. He does not intend to move to New York at the present time, but still visits his brother.

Following Helen's death, Michael and Robert inherited the shares appurtenant to the apartment. The estate has been paying the expenses of the apartment, including the maintenance charges. There are no maintenance arrears, nor have there been any documented complaints about any members of the Del Terzo family.

In 2011, Michael and Robert filed a joint application to have the apartment (shares and proprietary lease) transferred to them, but their application was denied. In its letter of rejection, the board noted the Del Terzos' "long history with the building" and "their special circumstances," but provided Robert with six months in which to vacate the premises. Although the letter does not give a reason for the board's denial of their application, the treasurer of the board of directors was deposed and articulated several reasons.

The board believed that only Michael met the requirement of financial responsibility. Since the application was on behalf of two separate families, their children (three total), and one nephew, defendant believed occupancy would exceed the number of couples who are permitted to live in a single apartment at any one time, without board consent, even though Michael did not intend to live in the apartment. Finally, the board disfavors nonprimary occupants as lessees and since Michael does not intend to presently live in the apartment as his primary residence, this would make the apartment his pied-à-terre.

As an initial matter, we reject defendant's argument that the four-month statute of limitations applies. Defendant waived that defense by failing to raise it in its answer or in a pre-answer motion to dismiss the complaint (*see* CPLR 3211 [e]; *Marine Midland Bank v Worldwide Indus. Corp.*, 307 AD2d

221, 222 [1st Dept 2003]). In any event, this is an action for breach of a proprietary lease; it was timely commenced within six years of defendant's denial of Michael and Robert's application for transfer of the apartment from their mother's estate.

The parties' substantive dispute is controlled by the terms of paragraph 16 of the proprietary lease. Paragraph 16 applies to assignments and transfers. In general, and in the absence of illegal discrimination, a cooperative corporation is not restricted in withholding its consent to the transfer to an apartment (*see Fletcher v Dakota, Inc.*, 99 AD3d 43, 48, 50 [1st Dept 2012]). This common-law right is also embodied in paragraph 16 (c) of the proprietary lease. At bar, however, there is another express contractual provision extending more favorable rights to a family member of a deceased lessee's proprietary lease. Paragraph 16 (b) provides that "consent shall not be unreasonably withheld to an assignment of the lease and shares to a financially responsible member of the Lessee's family." Clearly this provision was included to more easily allow an existing coop owner to devise or gift his or her cooperative apartment dynastically. Although defendant contends that its decision to deny the transfer is protected by the business judgment rule, we disagree. The business judgment rule generally insulates a board from attacks on its decisions, provided the board "act[ed] for the purposes of the cooperative, within the scope of its authority and in good faith" (*Matter of Levandusky v One Fifth Ave. Apt. Corp.*, 75 NY2d 530, 538 [1990]). At bar, however, paragraph 16 (b) imposes a heightened standard of reasonableness on the board, and the motion court correctly held that defendant did not satisfy that standard.

Although defendant denies that Robert can afford the maintenance, Michael and Robert, as co-lessees, are jointly and severally liable for any financial obligations pertaining to the apartment. Michael offered to personally guarantee, in writing, payment of those obligations, stating he would be "pleased to sign any further guarantees the board might request." Thus, even affording deference to defendant's assessment of Robert's financial circumstances, Michael is "a financially responsible member" of the decedent's family and there is little financial risk to the coop community as a whole in agreeing to the transfer given his proffered assurances. Certainly, a prospective shareholder's finances are a legitimate area of concern in a coop. In fact, the proprietary lease makes financial responsibility an express condition of obtaining consent to an intrafamily transfer. However, defendant's reliance on Robert's financial qualifications alone as a reason to deny the transfer applica-

tion is misplaced. By failing to consider the joint application as a whole, refusing to consider Michael's offer to provide further guarantee of payment, and requiring that each coapplicant be individually financially qualified to meet the carrying expenses of the apartment, even though Michael, alone, can easily afford them, defendant unreasonably withheld its consent to the transfer (*see Stowe v 19 E. 88th St.*, 257 AD2d 355, 356-357 [1st Dept 1999]).

Defendant's concerns about the likelihood of an overcrowded apartment are completely speculative and do not form a "reasonable" basis for defendant to deny plaintiffs' application for a transfer of the decedent's shares (*cf. Leonard v Kanner*, 239 AD2d 153 [1st Dept 1997] [approval of UCC foreclosure sale reasonably withheld], *lv denied* 91 NY2d 805 [1998]). In fact, the concern of overcrowding is completely inconsistent with the board's separate concern that Michael will not be living in the apartment full time. This incongruity highlights the speculative, if not specious nature, of the board's reason for withholding its consent. In any event, if at some future time it actually happens that the apartment is overcrowded, the board can pursue whatever remedies it has. The board's preference for owner occupancy is not implicated by Michael's disclosure that he will not be living in the apartment, because Robert, the co-owner, will be living in it, thereby serving the board's goal of owner occupancy.

The dissent places emphasis on paragraph 16 (b)'s reference to the benefit belonging to "a" family member, noting that here more than one family member applied for the transfer of the deceased lessee's rights. Paragraph 16 (b), however, does not limit the application to "only one" family member and there is no prohibition in the lease against a "Lessee" being more than one person. The only requirement is that in a situation where there are co-lessees, they agree to be held jointly and severally liable for any obligations under the lease. While the dissent correctly points out that paragraph 14 of the lease does restrict occupancy to no more than one married couple, unless board approval is obtained, there was no basis for the board to conclude that this lease provision would be violated in the foreseeable future. The board was advised that the occupants of the apartment would be the status quo, meaning Robert, his wife, and Robert's cousin (Helen's nephew). Michael will only be staying at the apartment occasionally when he visits New York.

The court erred in denying plaintiffs' claim for attorneys' fees and costs. Where, as here, a residential lease provides that the

landlord may recover legal fees incurred in an action resulting from the tenant's failure to perform a covenant in the lease, Real Property Law § 234 provides the tenant with an implied reciprocal right to recover attorneys' fees "incurred . . . as the result of the failure of the landlord to perform any covenant or agreement . . . under the lease." Concur—Andrias, Gische and Kapnick, JJ.

Friedman, J.P., and Saxe, J., dissent in a memorandum by Saxe, J., as follows: The decision of defendant cooperative corporation 33 Fifth Avenue Owners Corp. (the Coop) to withhold its consent to the transfer of the decedent's shares and proprietary lease to both of her adult sons was not unreasonable. The proprietary lease at issue here does not absolutely require that in the event of a cooperator's death, the Coop permit the assignment of the cooperator's shares and lease to all applying family members, as long as one of them is financially responsible. Rather, the proprietary lease imposes on the Coop only the obligation that "consent shall not be unreasonably withheld to an assignment of the lease and shares to a financially responsible member of the Lessee's family." Because the Coop's decision was not unreasonable, I would reverse the grant of plaintiffs' motion for summary judgment, and would instead grant defendant's motion for summary judgment dismissing the complaint.

Facts

Plaintiffs' decedent, Helen Del Terzo, began residing at 33 Fifth Avenue, apartment 5C, with her husband, Robert Del Terzo, Sr., in 1955; in 1965, they began renting apartment 5D as well. In late 1985, the building was converted to cooperative ownership, and the couple obtained the appurtenant shares and proprietary lease for the combined apartment in 1986. Helen died on November 17, 2010, having been predeceased by her husband. At the time of Helen's death, she resided in the apartment with her son Robert, Robert's wife and their two sons, and her nephew Gregory Donio, all of whom continued to reside there after her death.

In November 2011, Helen's two adult sons, plaintiffs Michael Del Terzo and Julius Robert Del Terzo (Robert), applied for the transfer of the apartment to them jointly. The application identified a total of eight proposed occupants: Michael, Robert, their wives and children, and their cousin. However, the employment, educational, and financial information in the application concerned only Michael, although Michael and his family were not going to primarily reside there; the application stated that Michael's family would reside there two to eight

days per month. Michael is a urologist with a practice in Pennsylvania, where he resides with his family. His income is approximately $500,000 per year, he has assets valued at $6,427,901, and a net worth of $5,890,115.

The Coop informed plaintiffs that it required Robert's financial information as well, and plaintiffs' follow-up application informed the Coop that Robert had $1,787 in cash and an annual income of approximately $48,000—less than his annual expenses of about $76,000—with the remainder of his assets consisting of his half share of the apartment itself, valued at $945,000, and the remainder of his mother's estate, valued at $595,787. The application acknowledged that Robert "has not had meaningful earned income in recent years" and that his finances alone "would not appear to support the retention of the apartments," but emphasized that his mother's trust assets had supported his family's living expenses, and that those assets remain available to them. Additionally, from the documentation Robert provided, the Coop learned that the address Robert and his wife used for purposes of filing federal tax returns was in Las Vegas, Nevada, a piece of information that called into question the bona fides of Robert's proposed tenancy.

The Coop unanimously denied plaintiffs' application, and directed plaintiffs to vacate the apartment within six months. Helen's estate, along with Michael and Robert individually, then commenced this action.

The majority agrees with the motion court that the Coop's rejection of plaintiffs' application was unreasonable as a matter of law, since one of the two applicants was financially responsible, and, implicitly, since the lease's prohibition against two or more families residing in one apartment is immaterial where that apartment is made up of two combined apartments. I disagree.

Paragraph 16 (b) of the proprietary lease provides that consent to an assignment "to *a* financially responsible member of the Lessee's family," "shall not be *unreasonably* withheld" (emphasis added). Importantly, the lease also prohibits more than one married couple from occupying the apartment without written consent.

The consent sought here was not for *a* "financially responsible" family member. It was for *two* adult family members, each of whom has his own family, but only one of whom the corporation considered to be financially responsible—and the intended present occupant was *not* the financially responsible family member. Moreover, the joint application sought approval for the possible future occupancy by both families. Thus, the

Coop was being asked to do several things it had valid reasons to reject: one, to give present possession of the apartment to a family that lacked the requisite financial responsibility; two, to approve part ownership of the apartment by an individual who would not be residing there; and three, to authorize possible future shared possession by two families of what is now a single apartment—a single unit covered by a single lease.

It was certainly reasonable for the Coop to decline to give part ownership and possession of the apartment to a family lacking the financial ability to maintain it; that was the basis for the refusal to consent to a family member's taking over possession of the apartment at issue in *Gleckel v 49 W. 12 Tenants Corp.* (52 AD3d 469 [2d Dept 2008]). Nor is that problem resolved by the joint ownership arrangement plaintiffs propose; rather, joint ownership in the manner proposed could create more potential complications.

Indeed, the reasonableness of the Coop's concerns about the proposed joint ownership arrangement is illustrated by the conflict between the two brothers' views or assumptions regarding future possession of the apartment. While the complaint asserts that when Michael and his family eventually returned to New York to live in the apartment, Robert and his family would vacate, Robert himself testified that "[t]here was never a discussion of one leaves and the other one comes in." Any future disagreement between the two joint owners as to their rights to possession could undoubtedly entangle the Coop in the legal problems that could ensue.

The fact that the apartment was made up of what had at one time been two distinct apartments does not make it unreasonable for the Coop to treat it as the single apartment it has been for decades; the lease and shares are for one apartment. By directing the Coop to allow both brothers to become lessees, the majority creates a situation in which the Coop must allow two individuals with families to each acquire the right to occupy the entire apartment, and the Coop would be unable to limit occupancy by each family to just a portion of the apartment.

Further, the Coop may reasonably rely on its legitimate policy against nonresident owners, which provides an additional ground to deny the application, since at least one of the two owners would not be residing in the apartment for the foreseeable future.

All that is necessary to justify withholding consent is a reasonable basis for that denial. The Coop had several reasonable grounds to do so.