(June 29, 2017)

■ MARK MAHERAS et al., Appellants, v AYAZ AWAN et al., Defendants, and MALIK ALI, Respondent. [55 NYS3d 55]—

Order, Supreme Court, New York County (Michael L. Katz, J.), entered February 17, 2016, which, to the extent appealed from as limited by the briefs, granted defendants Ayaz Awan, New York Best Development, Inc. and Malik Ali's (defendants) motion for summary judgment dismissing the first, second, third, and sixth causes of action as against defendant Ali, unanimously reversed, on the law, without costs, and the motion denied.

Plaintiffs purchased a three-family building with the intention of gutting it and renovating it. They retained defendant New York Best Development, Inc. (NYB) as the general contractor for the project. Defendant Ayaz Awan is the owner and president of NYB. His brother, defendant Malik Ali, is, according to Awan, an employee of NYB. According to plaintiffs, Ali's role with NYB, at least as far as concerned their project, was far greater than a mere employee, and they characterize him as a de facto principal.

Plaintiffs filed a complaint alleging that Ali is liable, along with NYB and Awan, for certain misrepresentations made in connection with the project. For example, they claim that Awan and Ali falsely represented that all plumbing and electrical work would be performed to code by licensed professionals; that NYB was staffed with highly qualified, experienced employees; that NYB was highly regarded and had a reputation

for excellence in the construction and redevelopment of residential brownstone buildings; and that Awan and Ali would both supervise and manage the entire project and ensure that the work would meet or exceed industry standards. Plaintiffs further allege that defendants promised to begin the work immediately upon the closing of the purchase of the building, and complete it in an expeditious fashion, but did not intend to, and indeed did not, fulfill that promise. As for the work itself, plaintiffs allege that it resulted in numerous Department of Buildings (DOB) violations, and had defects that seriously affected building-wide systems.

Plaintiffs asserted, inter alia, causes of action denominated fraud and deceit, fraud and conspiracy to commit fraud, deceit, and negligence. Defendants moved for summary judgment dismissing all of the claims and cross claims as against Ali, arguing that the fraud-based causes of action failed on the merits and that, in any event, Ali, as a mere employee of NYB, bore no liability. They relied primarily on Ali's deposition, at which Ali stated that his title with NYB was "General Manager" and that his duties were essentially coordinating and corresponding with clients and performing "day-to-day activities." This included providing office support to Awan, the project manager, typing up and sending out change orders, and sometimes coordinating with subcontractors. He testified that he may have purchased materials for NYB projects out of his pocket. Ali denied having any construction duties or experience, and insisted that he did not work on any of the projects physically and was not at the work site all the time. He typically only went to the work sites for client meetings and progress update meetings, and when the work was being inspected by a representative of the lender. Awan was responsible for project supervision. Ali explained that he was the person who typically prepared the bank draw requests, and estimated that he spent about 80% of his working time in the office.

Ali stated that when he was first hired by NYB, the company had three employees, including himself. He received a base salary that fluctuated depending on the project he was working on, but he could not state whether he was paid weekly, biweekly or monthly. Ali could not recall whether his salary was based on a percentage of the income generated by a given project; could not recall if he had any input regarding the amount of his compensation; and could not state his base salary. He could not recall whether he had insurance benefits while he worked for NYB, and could not confirm whether any tax was withheld from his compensation or whether he ever received a

1099 form, but he did state that he received a W-2. Ali insisted that he did not have an ownership interest in NYB and never received a K-1 form.

Ali testified that he met with plaintiffs about three or four times before they signed the agreement, including at the building, but had no recollection of what took place at these meetings. He was also present when they signed the agreement, but he did not recall participating in any conversations with plaintiffs in which any assurances were given concerning the work. He did state, however, that licensed plumbers and electricians worked on the project and that he was never made aware of complaints by plaintiffs about the quality of the work, although NYB did repair some "minor details" at their request.

In opposition, plaintiffs provided an affidavit by plaintiff Maheras. Maheras recounted that Ali was at the work site on a regular basis, with day laborers whom he represented to plaintiffs as subcontractors in an effort to make them appear to be more skilled than they were. Maheras stated that Ali demanded additional monies for work that was never done, and used the money to order parts and supplies that were used on other NYB projects. Further, Ali was, according to Maheras's affidavit, in constant contact with plaintiffs about the progress of the work, and dealt directly with plaintiffs' lender. In addition, once the construction work began, plaintiffs claimed, defendants began submitting change orders for additional money, which conveniently came very close to the amount held in a contingency fund plaintiffs were required by their construction lender to establish. In fact, plaintiffs asserted, the lender refused to release the money in that fund, and froze additional drawdowns, until it could be satisfied that defendants would be able to complete the project.

The court granted defendants' motion. It stated that the various allegations against Ali did not constitute fraud, and that Ali was just "doing a job at the company."

As proponents of a motion for summary judgment, defendants had the burden of establishing their entitlement to judgment as a matter of law (see Crockett v New York City Hous. Auth., 189 AD2d 591 [1st Dept 1993]). Further, the facts were to be viewed in a light most favorable to plaintiffs, with all reasonable inferences to be drawn in their favor (see Asabor v Archdiocese of N.Y., 102 AD3d 524, 527 [1st Dept 2013]). In light of those precepts, the court erred in granting summary judgment to defendants.

Plaintiffs' first, second and third causes of action rely on numerous detailed allegations concerning defendants' (includ-

ing Ali's) representations about NYB's ability to complete the project in a workmanlike and timely manner, including, for example, the promise that all of the various trade contractors employed on the project would be properly licensed. Defendants had the initial burden of establishing that the representations were not false by demonstrating that they had the capacity to perform in the manner plaintiffs claim they promised. However, they failed to do so. It was error for the court to shift the burden to plaintiffs, for purposes of the motion, to establish the falsity of the representations, including, for example, that the contractors were *not* licensed.

In any event, plaintiffs submitted sufficient evidence to create issues of fact. For example, their own sworn testimony, and reports submitted by their experts, established that defendants failed to retain licensed contractors, and that this and other departures from what had been promised to plaintiffs led to numerous hardships, including building code violations, construction delays, and construction defects. Plaintiffs also submitted proof that defendants, including Ali, conspired to discourage DOB workers from subjecting defendants' work to a thorough inspection, fabricated unnecessary work so as to take advantage of the availability of the construction lender's contingency fund, and otherwise engaged in a scheme by which they purchased materials with plaintiffs' funds, ostensibly for plaintiffs' projects, but used them at other projects being built by NYB and its affiliates. While the second cause of action is denominated "Fraud and Conspiracy to Commit Fraud," it should be upheld, notwithstanding that, as Ali argues, New York does not recognize a cause of action for conspiracy to commit fraud (*see Hoeffner v Orrick, Herrington & Sutcliffe LLP*, 85 AD3d 457 [1st Dept 2011]). That is because the claim, in alleging the underlying fraud, merely states that defendants conspired to perpetuate the fraud (*id.*).

We reject Ali's argument that, even if defendants committed the fraud alleged by plaintiffs, he cannot be liable because he was not a principal of NYB. Ali simply failed to establish that fact as a matter of law. His own deposition testimony was vague in terms of how he was paid, and, while it made clear that he received a W-2, he could not definitively state whether or not taxes were withheld from his pay, so his testimony could be read to suggest that he was paid in the manner of a person with an ownership stake and not simply as a salaried employee.

We further find that plaintiffs' sixth cause of action, for negligence, should survive summary judgment. There is considerable evidence that the work performed on the building

was done in a dramatically shoddy fashion, a point that Ali failed to address. Further, plaintiffs submitted more than enough proof that Ali participated in the commission of this tort to raise an issue of fact as to his personal liability (see Fletcher v Dakota, Inc., 99 AD3d 43, 49 [1st Dept 2012] ["a corporate officer who participates in the commission of a tort may be held individually liable, . . . regardless of whether the corporate veil is pierced" (internal quotation marks omitted)]). Concur—Acosta, P.J., Manzanet-Daniels, Mazzarelli and Webber, JJ.